## No. 13,792.

### MARCO BENDICH ET ALS. VS. LUKE SCOBEL ET ALS.

#### SYLLABUS.

##### ON MOTION TO DISMISS APPEAL.

1. An appeal will not be dismissed because of the absence from the transcript of evidence which could not, if present, influence the decision of this court.

2. The fact that counsel representing a number of appellants describe themselves, at one place in the motion, and in signing the bond of appeal, as "attorneys for plaintiffs" is not sufficient reason for dismissing the appeal for uncertainty as to the party appealing, when it otherwise appears, in such motion-and bond, that it was the purpose to appeal for all the parties cast. As to the bond, it would have been good, if it had been signed by none of the appellants.

##### ON THE MERITS.

1. Bayou LaChute has its source and runs its course in the Parish of Plaquemines, and is not a navigable stream in any sense that places it beyond the dominion and control of the State of Louisiana.

2. Hence, *quoad* a mere squatter, upon land owned by the State, and fronting on said Bayou, it is competent for the State to make a "cut-off," connecting said Bayou with other waters; and it is equally competent for the State to recognize or tolerate such "cut-off" when made by other persons.

3. And so, when a "cut-off" has been made and the State thereafter leases its lands upon the Bayou to persons, otherwise "squatters," who have full knowledge of its existence, and the one lessee makes no stipulation concerning it, whilst the other takes a lease of the "cut-off" itself, for the planting and cultivation of oysters, the one lessee has no right to close such "cut-off" to the injury of the other, even though he may find it prejudicial to the oyster beds upon the property leased by him.

4. The damages to be allowed for an alleged trespass must be established with reasonable certainty, and will not include traveling expenses, loss of time or attorney's fees incurred for the purposes of prosecutions instigated against the trespasser by the party claiming.

5. And, where the punishment of the trespasser has been submitted to and acted on by or is pending in the Criminal Court, the Civil Courts will be slow to inflict punitory damages.

Bendich et als. vs. Scobel et als.

A PPEAL from the Twenty-ninth Judicial District, Parish of Plaquemines.—*Hingle, J.*

*A. E. & O. S. Livaudais,* for Plaintiffs, Appellants.

*James Wilkinson,* for Defendants, Appellees.

*Joseph C. Gilmore,* and *Philip M. Gilmore,* for W. V. Gilmore, and as *amici curiae* (on application for rehearing).

On Rehearing *per curiam.*

STATEMENT.

The opinion of the court was delivered by

MONROE, J. In 1859, Marco Bendich established a camp for the fishing of oysters upon a point of swamp land, in the Parish of Plaquemines, owned by the State, and lying between Bayou LaChute, on the east, and Bay Bastian, on the west. Since that time, other persons have established similar camps, and there are, now, in that vicinity, ten or twelve such camps, consisting of small houses, built on piles driven into the marsh, in which the fishermen and their families make their homes. A short distance to the north of Bay Bastian, in Bay Adam, out of the east side of which Bayous Cherie and Longue flow, in a southerly direction, until, meeting together, they form Bayou LaChute, the general course of which is, also, southerly, a few hundred feet to the eastward of, and, approximately, parallel with, the shore of Bay Bastian, until it empties into that bay, upon the southeast side, the land between the Bayou and the bay and upon the shores of the bayou being that upon which the plaintiff, Bendich, is established, and the bayou, itself, near its mouth, being the site of his, and of the other plaintiffs,' oyster beds. There have, also, been, for a number of years, other camps and other oyster beds established on Bayou LaChute, higher up the stream, the occupants and owners of which were, formerly, in the habit of getting into Bay Bastian through the mouth of the bayou, but, in 1888, they made a canal, or "cut off," across the strip of land between the Bayou and the bay at a point near their camps and beds, which are, probably, less than a mile to the northward from the Bendich settlement; the purpose, as we conclude, from all the

testimony, being; to enable them to pass, more conveniently, from their oyster beds in the bayou to their other beds in the bay; to facilitate the loading of luggers anchored in the bay; and, also, possibly, to obtain more salt water for their oysters, bedded in the bayou. The "cut off," when first made, was eleven feet wide, and not more than two feet deep, and, in that condition, would have inflicted no injury upon the fishermen below. They were, nevertheless, apprehensive, and closed it, within two months, or less time, after it was opened. It was, however, soon reopened by those who had made it, and, thereafter, remained open, increasing in width and depth, until May, 1900, when it was again closed, by the men from the Bendich settlement, who were, thereupon, arrested and committed for trial before the criminal Court, at the instance of their upstream neighbors.

It was at this time that the plaintiffs, fourteen in number, brought the present action, the prayer of the petition in which reads as follows:

"Wherefore your petitioners respectfully pray that a writ of injunction herein issue, directed to the said defendant, Luke Scobal, and others, forever enjoining and restraining them from opening the said canal, or crevasse, and in any (manner) otherwise do (?) any action calculated to injure, damage, or destroy, your petitioners' property, or disturb them in the possession of their rights, or obstruct, change, or alter the course of Bayou LaChute, a navigable stream, and that they be duly cited to appear and answer hereto, and that, after due proceedings had, there be judgment in favor of your petitioners, and against the said defendants, perpetuating the injunction herein issued, and condemning defendants to pay all costs."

Upon the petition, as thus filed, a preliminary injunction was issued, purporting to restrain the defendants from opening the "cut off." As a matter of fact, the "cut off" was, at that time, open, but some of the plaintiffs proceeded to close it, after the issuance of the injunction. The defendants, through their counsel, took a rule to dissolve the writ, which was made absolute, as to all the plaintiffs except Bendich (who had not participated in closing the "cut off"), upon the ground that they had neither made affidavit, nor given bond; and they, then, took a rule ordering Bendich to show cause why the *status*, as it existed prior to the institution of the suit, should not be restored, which was referred, by the trial judge, to the merits. Thereafter, the defendants answered, and the case was tried upon its merits, with the result, that there was judgment for the defendants, dissolving the

injunction, *in toto,* dismissing the suit, and awarding damages, in favor of the defendant, Scobal, and against the plaintiffs, *in solido,* in the sum of $500; and from this judgment the plaintiffs have appealed.

It appears, from the evidence, that Bay Bastian is an estuary, opening into the Gulf of Mexico, across the mouth of which there is a small island, known as "Shell Island," and that, upon each side of this island, there is, or was, a passage to the gulf. It further appears that when Bendich established himself in his present camp, more than forty years ago, the tide passed through the, then, existing channel, to the eastward of Shell Island, and that there was considerable current, and fairly good navigation, for fishing boats, in said channel, along the eastern shore of the bay and in front of the mouth of Bayou LaChute. In the course of years, however, whether by reason of particular storms, or of the prevalence of winds, blowing in a particular direction, or because the bayous entering the bay upon the west side carry more water, and have stronger currents, or, because the "cut off," which is here complained of, has diverted the water of Bayou LaChute, so that less of it passes through its lower reach, and mouth, or, from these, and other, causes, combined, the fact is, that a change has taken place, and the tide now ebbs and flows almost entirely through the channel to the westward of Shell Island, which, at this time, is known as "Grand Bayou Pass," and is the only practicable pass from the bay to the gulf, whilst in the pass to the eastward, there is dry land, at low tide; the water upon the eastward shore of the bay in that vicinity is shallow; the bar at the mouth of the bayou obstructs the entrance thereto; and the lower reach of the bayou is filling up with mud, which threatens the destruction of the oyster beds there situated.

Our conclusion, upon this subject, is, that the filling up of the bayou, between its mouth and the "cut off," may, fairly, be attributed, in part, to the change resulting from natural causes, which has taken place in the movement of the water, between the bay and the gulf, and, in part, to the larger percentage of water which is diverted from the bayou, by the "cut off," which is now forty-two feet wide, and quite deep; and, whilst we are unable to say in what precise proportions these causes respectively, produce the effect thus mentioned, we are convinced that the withdrawal of the volume of water now diverted by the "cut off," is a potent influence, whereas the "cut off," considered with reference to its dimensions in 1888, was comparatively, harmless.

It further appears, from the evidence, that Bayou LaChute has its source and runs its course entirely within the body of the parish of Plaquemines, and is navigable, when navigable at all, for very small craft; that the adjacent swamp land and the bed of the bayou, itself, belong to, and are under the control of, the State of Louisiana; and that, as between the State and the parties to this litigation, whatever legal rights the latter may possess, whether with respect to the occupancy of the land, upon which their camps are established, or to the bottoms, in which their oyster beds are planted, are, and must be, derived from the State, or its representatives, the Parish of Plaquemines.

It further appears that the "cut off" in question, had been open, continuously, for more than eleven years before the plaintiffs undertook to close it, in May, 1900, and that, during that time, neither the State of Louisiana, nor the Parish of Plaquemines, nor the plaintiffs herein, made any complaint of it; but that, on the contrary, the plaintiffs have, within that period, leased the bottoms upon which they are now bedding their oysters from the Parish of Plaquemines, with full knowledge of the existence of the "cut off," whilst the defendant, Scobal, has leased his oyster beds from the same authority, by a contract in which the "cut off" is not only mentioned, but included.

The evidence as to the cause and extent of the inquiry to the defendant, Scobel's oyster beds, as to traveling expenses incurred by him, and as to loss of time sustained, is inconclusive and unsatisfactory, whilst that in support of the claim for attorney's fees relates to fees for services rendered in connection with the closing and opening of the "cut off" in May, 1900, and the subsequent prosecution of the plaintiffs, resulting in their being compelled to pay fines and costs to the amount of $287.00.

### ON THE MOTION TO DISMISS THE APPEAL.

The defendants, through their counsel, move to dismiss the appeal, on the grounds: (1) That all the evidence adduced and filed is not included in the transcript; and (2) that it does not sufficiently appear, from the motion and bond, by which of the plaintiffs the appeal was taken.

Concerning the first ground; we find the following in the transcript:

"Defendant offers the affidavit, warrant and commitment, and bonds to the District Court, in the case of the State of Louisiana vs. John

Hihar *et als.,* also, the record No. 40, and verdict and sentence therein, in the case of State of Louisiana vs. Anthony Tonkovitch *et als.*

"It is admitted that the defendants in the above judgment referred to paid their fines and costs, which amounted to $287 and filed as Exhibit No. 7 D.

"And also the proceedings of this suit from the minutes."

The complaint is, that the clerk had included in the transcript, only the affidavit and warrant, in the one prosecution, and the information, in the other, and this complaint is sustained by the facts. There is no doubt, therefore, that the transcript is defective, as alleged. We are unwilling, however, on that account, to dismiss the appeal, in view of the admission as to the result of the one prosecution, and of the information offered by the affidavit and warrant, as to the other; since nothing else, in either record, could affect the merits of this case. As to the second ground; it is true that the counsel by whom the appeal was taken appear to have styled themselves "attorneys for *plaintiff,*" at one place, in the motion, and, also, in signing the appeal bond; but, in both motion and bond, the title of the suit is given, the judgment, from which the appeal is taken, is described, as having been rendered against the *plaintiffs* (in the plural), and the parties appealing are referred to as the *"movers;"* and, as "Marco Rendich *et als,"* respectively, so that, there can be no reasonable doubt as to the purpose of either motion or bond. "The fact that the appeal bond is signed by only one of several appellants does not vitiate the appeal, inasmuch as, under the settled jurisprudence of the State, such bond is valid, even if not signed by the appellant."

Murrell vs. Murrell, 33rd Ann. 1233.

The motion is, therefore, denied.

## On the Merits.

The plaintiffs were, originally, "squatters" on swamp land belonging to the State, and bedded their oysters in a stream over which the authority of the State was paramount. Beykin vs. Shaffer, 13 Ann. 129; Hamilton vs. R. R. Co., 34 Ann. 970; Egan vs. Hart; 45 Ann. 1363; Leovy vs. U. S., 177 U. S. 621. That condition of affairs would not, however, have justified the defendants, having no better right upon the property, and in the absence of any complaint from the owner, in molesting the plaintiffs, whether by diverting the stream in which their oysters are bedded, or otherwise. And, whilst it may be that the

"cut off," as originally made, in 1888, did not amount to such molestation, the evidence shows that, in 1900, it had attained such proportions as to inflict serious injury.

If, therefore, the owner had held, and was still holding, aloof, we are not prepared to say that the plaintiffs would not be entitled to some relief. But, after the closing of the "cut off," in 1888, and the opening of the same, shortly afterwards, the plaintiffs took no further steps, and allowed the "cut off" to remain open for more than eleven years. In the meanwhile, the plaintiff, Bendich, and the defendant, Scobel, alike, obtained, from the Parish of Plaquemines, acting as the representative of the State, under, and by virtue of the authority conferred by Acts 110, of 1892, and 121, of 1896, leases of the land and water front occupied by them, respectively, the lease to Bendich bearing date, January 16, 1893, and that to Scobel, December 31, 1899. It is not pretended that Bendich was ignorant of the fact that the "cut off" was open when he took his lease, but he appears to have made no demand of the lessor upon the subject, and his lease contains no reference thereto. The lease to Scobel, upon the other hand not only refers to, but includes, the "cut off," as part of the water front, leased. Under these circumstances, and as the State did not assume the obligation of closing the "cut off," of which the lessee had knowledge, and did not guaranty that it, or some other outlet, would not, eventually, divert, wholly, or, in part, the waters of the bayou, and as, upon the other hand, the lease to Scobel, made nearly seven years after that to Bendich, during which time the latter had remained silent, was entered into with express reference to the "cut off," as part of the leased property, we are of opinion that the action taken by the plaintiffs, in May, 1900, and the complaint, made in their petition, came too late, and, hence, that the judgment appealed from was correct, in so far as it dissolved the injunction and dismissed the suit.

Upon the question of the damages, claimed by Scobel in reconvention, we have found, as a fact, that the proof, as to the cause and extent of the alleged damages to his oysters and oyster beds, and as to traveling expenses incurred, and loss of time sustained, by him, is unsatisfactory and inconclusive. It seems more likely, from the proof referred to, that the damage to the oysters was caused by storms, rather than by the temporary closing of the "cut off," whether in May, before the suit was filed, or after the filing of the suit, and the method of arriving at

the proportion of oysters destroyed appears to have been a good deal a matter of guess work.

The defendant testifies as follows concerning his traveling expenses and loss of time: "I have spent over $100, in traveling expenses, for the purposes of that cut off. I have lost one month's time in coming to court. My time is worth $45. I spent this time and my traveling expenses in trying to get my cut off restored."

Properly speaking, the only damages that he would be entitled to recover in this suit would be such as he may have sustained by reason of the illegal resort to the writ of injunction. Act No. 50 of 1886. If it be conceded, for the purposes of the argument, that the plaintiffs are bound by the testimony as to other damages because of their failure to object to it, the fact remains, that the testimony relied on is insufficient. It gives no particulars and fails to inform us how much of the money and time referred to were expended in attending to the criminal prosecutions instigated by the defendants, and it is not pretended that any part of such expenditure was made for the purposes of this litigation. The only claim for attorney's fees is that made by the defendant, Scobel, who asks to be reimbursed the fee paid, or incurred, in connection with the closing of the "cut off" in May, 1900, and for the purposes of the criminal prosecution which followed that occurrence; the claim of all the defendants, including Scobel, for the recovery of the fee of their attorney for obtaining the dissolution of the injunction in this case, being reserved. There is nothing in the law or jurisprudence of this State which authorizes the allowances of the claim as thus made. Bentley vs. Fisher Lumber Co., 51 Ann. 457. The question of the punishment of the plaintiffs has been relegated to the Criminal Court, and the plaintiffs have been fined, in one proceeding, and, possibly, in another. We do not feel called upon to inflict a further penalty.

For these reasons, it is ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided, and reversed, in so far as the same condemns the defendants in damages; and it is, now, adjudged and decreed that the demand in reconvention of the defendant, Luke Scobel, as herein made, be rejected, at his cost. It is further ordered, adjudged and decreed that, in all other respects, said judgment be affirmed, the costs of the lower court, except as herein otherwise ordered, to be paid by the plaintiffs, and the costs of the appeal to be paid by the defendants.

## PER CURIAM.

After the judgment of the court herein on appeal was rendered, William V. Gilmore presented a petition for rehearing, setting forth that he is aggrieved by the said judgment in this, that he is the owner and in legal possession of the land through which the "cut off," referred to in the opinion of the court, was made, and that his rights of ownership and possession will suffer prejudice and damage if the same are not provided for or reserved in the judgment.

How and when his ownership and possession arose, and just what he claims, and what his grievance is, are set forth at length in his petition and supported by exhibits attached.

It suffices to say that Mr. Gilmore, not having been in any way connected with this suit, or a party to it, so far as the record discloses, is in no manner bound by the judgment rendered.

With regard to the application for rehearing made on behalf of defendant, Luke Scobel, a consideration anew of the evidence has not lead to the conclusion that he should recover in reconvention the damages awarded him by the court *a qua*. Neither are we of the opinion that in respect to such damages (save as to attorneys fees) the judgment of this court should be one of non-suit instead of rejection. The claim for damages was in *contestatio litis;* the parties have had their day in court upon it; let it stand as the thing adjudged.

But as to the claim of the defendants, including Scobel, for the recovery of attorney's fees for obtaining the dissolution of the injunction taken out by plaintiffs, the same was reserved in the opinion heretofore handed down, and, perhaps, should have been mentioned in the decree as reserved. Complaint is made that it was not.

It is, therefore, ordered that the decree of the court herein be amended by reserving to defendants the right to sue for recovery of damages as attorneys fees for obtaining the dissolution of the injunction sued out, and, as thus amended, the decree do stand as the judgment of the court.

Rehearing refused.