We find no error in the judgment appealed from by plaintiff.

Judgment affirmed.

———

(114 So. 591)

No. 28141.

## SPEARMAN v. TOYE BROS. AUTO & TAXICAB CO., Inc.

Oct. 31, 1927.

*(Syllabus by Editorial Staff.)*

**1. Courts ⬥224(10)—In action for assault causing humiliation, but not physical injuries, appeal involving more than $2,000 lies to Supreme Court (Const. art. 7, §§ 10, 29).**

Under Const. art. 7, §§ 10 and 29, excepting from Supreme Court's appellate jurisdiction suits for damages for physical injuries to or death of person, or other damages sustained by such person or heirs or legal representatives, arising out of same circumstances, appeal, in woman's action for assault, causing humiliation, but not physical injuries, and involving more than $2,000, lies to Supreme Court, and not to Court of Appeal.

**2. Carriers ⬥314(1)—Petition by motorbus passenger for damages for assault by chauffeur held sufficient as to payment of fare.**

In passenger's action for assault by motorbus chauffeur, petition, although not alleging in so many words that plaintiff had paid for transportation, but showing from context that plaintiff was passenger, was sufficient as against exception of no cause of action for failure to allege payment of fare as passenger.

**3. Carriers ⬥283(3) — Motorbus chauffeur's gross carelessness in touching woman passenger's leg when operating bus held to render employer liable.**

In action by woman passenger on motorbus against motorbus company for assault by chauffeur when he touched her thigh in operating the bus, evidence of chauffeur's gross carelessness or indifference, amounting to rudeness, *held* to make company employing him liable to passenger.

**4. Damages ⬥87(1) — Only compensatory damages may be recovered for a tort in Louisiana.**

Only compensatory damages, and not punitive damages, may be recovered in Louisiana in an action for tort.

**5. Carriers ⬥319(3)—$2,500 verdict for woman passenger for motorbus chauffeur's carelessness in touching leg when operating bus reduced to $250, with interest and costs.**

$2,500 verdict in favor of woman passenger in motorbus for carelessness of chauffeur in touching her leg when operating bus, *held* excessive, and reduced to $250, with legal interest from judicial demand, and costs in both trial and appellate courts.

**6. Costs ⬥234—Defendant, though successful in having verdict reduced, may be required to pay costs of appeal (Act No. 229 of 1910).**

Although motorbus company, sued by woman passenger for chauffeur's touching her leg, which occurred through his carelessness and indifference rather than through willful intent, was successful in having verdict greatly reduced on appeal, under Act No. 229 of 1910, Supreme Court notwithstanding could require defendant to pay costs of appeal.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Action by Mrs. Emma Spearman against the Toye Bros. Auto & Taxicab Company. From a judgment for plaintiff, defendant appealed to Court of Appeal, which transferred cause to Supreme Court. Modified and affirmed.

John P. Sullivan and David Sessler, both of New Orleans, for appellant.

J. L. Warren Woodville, of New Orleans, for appellee.

O'NIELL, C. J. · This is a suit for damages. The plaintiff charges that, while she was riding on the front seat of a sight-seeing car operated by the defendant as a public conveyance, the chauffeur, "with his right hand, grasped her left thigh, squeezing it, greatly to her humiliation, mortification, mental pain, and anguish." She claims $15,000 damages "for the humiliation, mental anguish, pain, and suffering" which she says she endured "as the result of the insult and outrage." There is no claim for damages for physical injury, nor allegation that any such injury was inflicted. The civil district court, trying the case without a jury, gave judgment for the plaintiff for $2,500, from which the defendant appealed to the Court of Appeal. That court, on its own motion, transferred the case here for want of jurisdiction. The appellant insists that the case is within the jurisdiction of the Court of Appeal, and should be retransferred.

### On the Question of Jurisdiction.

[1] The third paragraph of the tenth section of article 7 of the Constitution of Louisiana, defining the jurisdiction of this court in civil cases, makes this exception, viz.:

"Except in suits for damages for physical injuries to, or for the death of a person, or for other damages sustained by such person or his heirs or legal representatives, arising out of the same circumstances."

The cases coming within the exception are, by the general terms of the 29th section of the same article of the Constitution, appealable to the Courts of Appeal. This case, however, is not within the exception, for it is not a suit for damages for physical injuries or for damages caused by or resulting from an act which caused also a physical injury. As far as the allegations and the proof go, there was no more of a physical injury to the plaintiff than there would have been if she had been insulted verbally by the chauffeur. The purpose of excepting from the juris-diction of this court suits "for other damages * * * arising out of the same circumstances" as those causing physical injuries was to confer upon one and the same appellate court jurisdiction over a suit for the damages of every character resulting from a wrongful act or negligence causing physical injury to a person. As the wrong complained of in this case, if it occurred, did not cause physical injury to the plaintiff, and as the amount in dispute exceeds $2,000, exclusive of interest, the appeal is within the jurisdiction of this court, and not of the Court of Appeal.

### On the Merits.

[2] The defendant filed an exception of no cause of action, before answering the petition, and renewed the plea in this court, on the ground that the plaintiff did not allege that she had paid her fare as a passenger on the car. It is true that she did not allege, in so many words, that she had paid for transportation as a passenger on the car, but the context of the petition showed plainly enough —and it was never disputed—that she was rightfully on the car, as a passenger, entitled to proper treatment and respect at the hands of the employees in charge of the vehicle. The judge was right, therefore, in overruling the exception of no cause of action.

[3] The plaintiff and a Mrs. Brogdon, an aunt of her husband, boarded the car on Canal street, near Carondelet street, in New Orleans, at the beginning of one of the scheduled sight-seeing trips. When the car stopped, according to custom, at the entrance to the Roosevelt Hotel, on University place, to take on other passengers, the plaintiff asked permission to bring with her a six year old child of a friend living on the other side of University place. She offered to pay the child's fare, but was told by the chauffeur or the lecturer, who were in charge of the car, that there would be no charge for the child. When she returned with the child, she re-

quested to be transferred from the seat which she and her companion had taken, immediately behind the driver's seat, to the driver's seat, so that Mrs. Brogdon, who was a stranger in the city, might have a better view along the route. The so-called lecturer, with his megaphone, occupied the left end of the front seat, and the chauffeur sat next to him. The plaintiff selected the seat next to the chauffeur, and placed the child between her and Mrs. Brogdon, who sat on the right end of the front seat. The five persons filled the the seat to its capacity; and the record shows beyond any doubt that, with five persons on the front seat, the chauffeur had to be very careful to avoid letting his hand come in contact with the leg of the person beside him whenever he manipulated the lever controlling the speed of the car, which he had to do often, and sometimes hurriedly, in obedience of traffic regulations. On the trip in question, according to schedule, the car went first through the downtown section of the city, as far as Esplanade avenue, and thence proceeded uptown as far as Audubon Park. According to the plaintiff's testimony, the chauffeur's hand touched her leg twice during the whole trip. She says that, on the way downtown, his hand touched her knee, and that, though he apologized immediately, she thought the occurrence unusual, and knew it was intentional, because she had ridden in such cars many times before, sitting closer to the chauffeur than she was on that occasion. She says that she moved away from the chauffeur as far as possible, and sat in an uncomfortable position during the rest of the journey downtown, and until the car had gone uptown to Audubon Park and was returning down St. Charles avenue, when, according to her testimony, somewhere near Louisiana avenue, the chauffeur's right hand grasped and squeezed her left thigh. She says that she immediately demanded that he stop the car and let her out, and that he

begged her pardon, and asked her not to report him to the company. She testified that, when she and her companions had alighted, or when they were about to alight, she asked the lecturer to give her the name of the chauffeur, and the latter laughed and said: "Harold Roberts." In fact that is not his name. The plaintiff wrote and kept a memorandum of the name Harold Roberts, and says that her husband inquired at the company's office, by telephone, and was told that there was no one of that name employed by the company. Several months afterwards she identified the chauffeur, talking to a policeman, at the place where the company sold tickets, on Canal street, and she asked the ticket seller the name of the man talking to the policeman, and was given his true name. She then approached him, and asked if that was his name, and he acknowledged that it was.

He testified that, on the occasion complained of, his hand merely brushed the woman's leg, which was unavoidable, when he shifted the gears, and that he immediately apologized, saying: "Pardon me, lady; if you will move over a little, that won't occur." He denied that he gave a false name when she got offended and insisted upon getting out of the car.

The two other witnesses who testified in the case were Mrs. Brogdon and the so-called lecturer, neither of whom saw the chauffeur put his hand upon plaintiff's leg or heard him give a false name when the plaintiff insisted upon getting out of the car. Mrs. Brogdon, however, saw the plaintiff write the name, Harold Roberts, after asking for the chauffeur's name, and after he had made a reply which Mrs. Brogdon did not hear, or did not understand. All that she or the lecturer heard or observed was that the plaintiff suddenly demanded that the chauffeur stop the car and let her out, complaining bitterly that he had

insulted her, and threatening to report him to the company.

[4-6] The question of liability of the defendant depends upon whether the chauffeur's putting his hand upon the plaintiff's leg was done willfully or accidentally, and, if done accidentally, whether the accident was the result of such carelessness and rudeness on the part of the chauffeur that his employer should be held responsible. The plaintiff was probably mistaken when, in her testimony, she said that she knew at the time that the chauffeur's touching of her knee during the downtown journey was intentional; for she averred in her petition that, when the chauffeur's hand came in contact with her leg, when he shifted the gears, during the downtown journey, she thought that the occurrence was accidental or unavoidable. She is a very sensitive woman, as shown by her frequent flareups and tirades directed at the chauffeur, while she was on the witness stand. There is no doubt that her extreme modesty and sensitiveness, which is commendable, affected her good judgment so as to cause her, unintentionally, to exaggerate the offense for which she insisted upon stopping the car and getting out. We are not convinced that the chauffeur grasped and squeezed her leg, as she avers, or that he either grasped or squeezed it, or wantonly put his hand upon her. Her own exemplary conduct during the journey was such as to convince him or any other chauffeur that he could not take any such liberty with her, and get away with it—as the familiar saying goes. Besides, there were the two companions of the plaintiff sitting beside her; there was the lecturer sitting beside the chauffeur, and he was in plain view of twenty or more passengers behind him in the open car. On the other hand, something unusual must have happened to offend and excite the lady to the extent to which she was offended and excited when she insisted that the chauffeur should stop the car and let her out. Our conclusion from all of the evidence is that the chauffeur's offense was not a willful or deliberate insult, but was gross carelessness or indifference, amounting to rudeness. Although there is some doubt about the matter, the evidence makes it more likely that he did, than that he did not, give the false name, Harold Roberts, when the plaintiff threatened to report him to the company. If he did so, it was reprehensible, of course, but was done perhaps without serious thought of its being a very wrong way of avoiding being reported to the company, for which wrong the company should not be penalized. The company is responsible for the chauffeur's carelessness, constituting rudeness, in his forgetting the proximity of the lady's leg while he was shifting his gears. There is no good reason, however, for allowing a large amount of damages in such a case. We must not be so carried away with the seriousness of the offense as to forget that, in Louisiana, the courts do not allow punitive damages, but only compensatory damages, in an action for tort. It is the province of the courts having jurisdiction in criminal prosecutions—not of the courts exercising only civil jurisdiction—to administer punishment for the wrongs that are committed. Although it is impossible to estimate, in money, the actual damage which the plaintiff has suffered, in such cases the law commands us to do our best in that way; for article 1934 of the Civil Code declares that, although the general rule is that damages are the amount of loss, or of the deprivation of gain, which the complainant has sustained, yet there are cases where damages may be assessed "without calculating altogether on the pecuniary loss or the privation of pecuniary gain"; and one of the examples given, of such damages, is as in cases of offenses or quasi offenses. The offense which the plaintiff in this case complains of did not affect her good name or reputation in any way. It hu-

miliated and excited her greatly; and for that suffering we shall allow $250 as being, with the legal interest allowed from judicial demand, and the costs of both courts, adequate compensation. Under authority of the Act 229 of 1910 we will require the defendant to pay the costs of appeal, notwithstanding our amending of the judgment appealed from.

The judgment appealed from is amended by reducing the amount of the principal to $250, and, as amended, the judgment is affirmed. The defendant is to pay all court costs.