(133 So. 379)

**LEOPOLD v. BRADFORD–HUTCHINSON LUMBER CO., Inc., et al.**

No. 27999.

Feb. 2, 1931.

Rehearing Denied March 2, 1931.

Foster, Hall, Barret & Smith, of Shreveport, for appellants.

Parsons & Colvin, of Mansfield, and Phanor Breazeale, of Natchitoches, for appellee.

ST. PAUL, J.

This is an action against the Bradford-Hutchinson Lumber Company, a corporation and the Lake End Lumber Company, a partnership, composed of J. B. Hutchinson and C. M. Hutchinson, for the manufactured value of timber cut from lands belonging to plaintiff and described as follows; the N. ½ of N. W. ¼ of section 9; the N. W. ¼ of S. E. ¼, the N. E. ¼ of S. W. ¼, of section 4; and also the S. W. ¼ of N. W. ¼ of section 4; all in Tp. 10, R. 10, Natchitoches parish.

On November 14, 1917, plaintiff sold to Willis Wells the S. W. ¼ of the N. W. ¼ of section 4; reserving the right to remove timber within two years. And on December 17, 1919, Wells sold the same land to John W. Ramsey, subject, however, to Leopold's right to the timber.

There was an error in the description of this land, the parties intending to convey and to purchase the S. E. ¼ of the N. W. ¼ (known as the Jack Clark 40), but this error was not corrected on the records until the day of the filing of this suit.

So that on November 1, 1918, plaintiff had a title to the S. E. ¼ of N. W. ¼ aforesaid. And on that day he sold to R. T. Moore, trustee, all the timber on said S. E. ¼ of N. W. ¼, as well as upon the other lands first above described (except S. W. ¼ of N. W. ¼), and gave him five years from that date to remove the same. Afterwards the defendants acquired the rights of Moore.

We mention this at the beginning so as to dispose of the S. W. ¼ of N. W. ¼, because one of the defenses is that the defendants paid Ramsey for the timber on said land, whilst Ramsey was the recorded owner thereof.

There is some confusion in the testimony as to this, which leaves it uncertain whether Ramsey was paid for the timber on the Jack Clark 40 or on the S. W. ¼ of N. W. ¼. For it is certain that Ramsey was paid for

the timber on one of these quarters. Defendants say they paid him for the timber on S. W. ¼ of N. W. ¼; and the trial judge says that Ramsey was in the court-room consulting with plaintiff's attorneys and did not take the stand to contradict this. But it is certain that defendants intended to purchase and plaintiff intended to sell the timber on all the lands of plaintiff. No doubt, therefore, when plaintiff sold to defendants the timber on S. E. ¼ of N. W. ¼, the intention was to sell the timber on the land not already sold to Wells. But, be that as it may, he did sell the S. E. ¼ of N. W. ¼, and so defendants were not called upon to pay for that timber to Ramsey, for they owned it. Hence the payments for timber, made to Ramsey, must have been for the S. W. ¼ of N. W. ¼. Otherwise defendants would have been paying for that timber twice, once to Leopold, from whom they bought it by a clear title, and again to Ramsey, who held no recorded title whatever thereto.

We therefore agree with the district judge that defendants are not liable for the timber on that land.

### I.

■ The time for removing the timber on the other tracts expired November 1, 1923. In September, 1923, defendants' mill burned, and their teams were removed to another parish. The teams were not returned until January 22, 1924, and then defendants began cutting again. It is in evidence that one Bullock, who had purchased part of the land, notified defendant during the Christmas holidays of 1923 that the time limit had expired. And whilst this is denied, it is certain that defendant took an extension deed from Bullock February 29, 1924, and by their own admission continued cutting even after this. But they never did notify plaintiff that they had done any cutting on the land, and he had

to find this out for himself. The trial judge thought, and so do we, that the defendants cut the timber with knowledge that the time limit had expired, and hence were in bad faith.

### II.

■ One Parent, who did the cutting after the return of the teams, testified that he knew what he had cut, and could tell about a year afterwards what timber had been cut in September and what had been cut in February, and two witnesses testify that this could be done. He testified that he scaled the later cut, and found that it amounted to 243,120 feet. Against this positive testimony, which was accepted by the district judge, we have only the testimony of an expert who estimated the amount of timber originally on the land, and a rough guess drawn from Parent as to the proportion of timber cut after November 1, 1923. We think, however, the positive testimony must prevail over the estimate. And we therefore agree with the district judge that the amount of timber cut was 243,120.

### III.

■■ The measure of damages where the defendant was in bad faith is the manufactured price of the lumber less the price of manufacture; in this case it is fixed at $9.85 per thousand. So that the defendant, the Bradford-Hutchinson Co. is liable for $2,394.73, as allowed by the district judge. Ward v. Hayes-Ewell Co., 155 La. 15, 98 So. 740.

We do not think they are entitled to any further reduction for the 25 per cent. of the manufactured price of the lumber which they paid to the Lake End Lumber Company for the use of the mill, because the agreement between the two companies was that the Lake End Lumber Company should furnish, not only the use of the mill, but also all the tim-

ber to be used in the mill, and should receive one-fourth of the manufactured price of the lumber. Hence it is clear that this one-fourth represented, not only the rental of the mill, but also the value of the timber and part of the profits. And with the record before us we are unable to separate these items. Hence this item of reduction was properly disallowed.

## IV.

We think the trial judge erred in giving judgment against the Lake End Lumber Company. That concern had nothing whatever to do with the cutting of the timber. Its contract with the other defendant was simply that it sold the latter its timber holdings and gave it the use of its mill; for which it was to receive one-fourth of the price of the manufactured lumber. There was no authority given on the part of the Lake End Lumber Company to cut any timber other than that which it owned and turned over to the Bradford-Hutchinson Company. If the latter went out and cut any timber to which it had no right, the Lake End Lumber Company was in no manner responsible for such acts.

The case as to this defendant must therefore be reversed.

## Decree.

The judgment herein appealed from is therefore affirmed in so far as it gives plaintiff judgment against the Bradford-Hutchinson Lumber Company, Incorporated, but is reversed in so far as it gives him judgment against the Lake End Lumber Company, and the individual members thereof, and plaintiff's claim as to them is rejected. It is further ordered that the Bradford-Hutchinson Lumber Company, Incorporated, pay all costs of both courts.

O'NIELL, C. J. (dissenting).

I do not subscribe to the proposition that one whose timber has been felled and removed from the land by another is entitled to more damages if the party who took the timber was in bad faith than if he acted in good faith. In that respect the prevailing opinion rendered in this case cannot be reconciled with the doctrine, which is well established by the following decisions, that punitive damages cannot be allowed in a civil action, viz.: Serio v. American Brewing Co., 141 La. 291, 74 So. 998, L. R. A. 1917E, 516; Vincent v. Morgan's La. & T. R. & S. S. Co., 140 La. 1027, 74 So. 541; Burt v. Shreveport R. Co., 142 La. 308, 76 So. 723; Lee Lumber Co. v. Union Naval Stores Co., 142 La. 521, 77 So. 131; Dunson v. Baker, 144 La. 167, 80 So. 238; Howell v. Vicksburg, S. & P. Ry. Co., 144 La. 428, 80 So. 613; Hanna v. Otis, 151 La. 851, 92 So. 360; Selser v. Reyol, 152 La. 454, 93 So. 675; Janssen Catering Co. v. Abadie, 157 La. 357, 102 So. 428; Mundy v. Phillips, 157 La. 445, 102 So. 519; Spearman v. Toye Bros. Taxicab Co., 164 La. 677, 114 So. 591; Moulin v. Monteleone, 165 La. 169, 115 So. 447.

The only decision cited on that subject, in the prevailing opinion in this case, is Ward v. Hayes-Ewell Co., 155 La. 15, 98 So. 740; and the only authorities cited in that case on the subject of the measure of damages were article 525 of the Civil Code; Eastman v. Harris, 4 La. Ann. 193, and St. Paul v. La Cypress Lumber Co., 116 La. 585, 40 So. 906. Article 525 of the Civil Code merely gives to a person whose material has been used by another person in making a finished product the right to claim the finished product "on reimbursing the price of the workmanship." The next article declares that that rule does not apply when the value of the finished article greatly exceeds the value of the material. There is nothing in either of these articles of the Code

making a distinction between the extent of the liability when the maker of the article was in good faith and when he was in bad faith. In fact, I do not consider article 525 appropriate here, or in the decision in which it was cited, where the plaintiff did not claim the privilege of taking the lumber on reimbursing the cost of manufacturing it.

In Eastman v. Harris, a raft of logs belonging to the plaintiff and being transported down the Mississippi river became stranded on the land of the defendant, and he cut up the logs, made them into fuel for steamboats, sold the fuel, and kept the price. The plaintiff was allowed the full value of the fuel, by the lower court, without deduction of the cost of converting the logs into fuel. The defendant appealed; and, in affirming the judgment, this court said: "As the plaintiff has asked an affirmance of the judgment, it is not necessary to decide whether a possessor in bad faith, under such circumstances, is entitled to compensation for the labors bestowed upon it, and by which it has been converted into a more valuable form. But we may remark that it is at best questionable. The policy of the civil law was to sanctify and uphold the right of property by discouraging and punishing wrongdoers," etc. It was thus acknowledged that the allowance of something more than mere compensation for the loss which the party whose property was taken had sustained was intended as a punishment of the wrongdoers. No such distinction, between a wrongdoer who proceeds willfully and one who proceeds negligently, can be reconciled with our jurisprudence as it stands now.

The decision in St. Paul v. Louisiana Cypress Lumber Co. seems to sustain the proposition that the measure of damages in cases like this depends upon whether the party taking the timber was in good or bad faith; but the decision was rendered at a time when the question of the right of the courts to inflict punishment, by granting punitive damages, in a civil action, was unsettled. For example, in Bendich v. Scobel, 107 La. 242, 31 So. 703, it was said that, where the punishment of the trespasser had been submitted to and acted upon by, or was pending in, the criminal court, the civil courts would be slow to inflict punitory damages. And, in McGee v. Louisiana Lumber Co., 123 La. 696, 49 So. 475, where the court allowed as damages only the stumpage value of the timber taken by the defendant from the plaintiff's land, the court said that the case was "not a case for punitive damages." That decision, also, was rendered before this court had settled the question, in Serio v. American Brewing Co., and in the long list of similar cases which I have cited above, as to whether punitive damages, or only compensatory damages, could be allowed in an action for damages, for trespass, or for any other offense. If we adhere to the jurisprudence against allowing punitive damages, or any other than compensatory damages, the question as to whether the defendant was a wanton trespasser or was merely negligent, in a case like this, has nothing to do with the measure of damages. Trespass is a criminal offense. The only orderly way to punish a trespasser, and thereby to deter others from committing the offense—whether for profit or for mere mischief—is to prosecute the trespasser in a criminal court.

My opinion, therefore, is that the liability of the Bradford-Hutchinson Lumber Company for damages should be limited to the loss which the plaintiff actually suffered,—which was the stumpage value of his timber. In all other respects I concur in the decision rendered in this case.