140 So.2d 11

David GUNTER et al.

v.

Oscar E. LORD et al.

No. 45858.

March 26, 1962.

Rehearing Denied April 30, 1962.

Gist, Murchison & Gist, DeWitt T. Methvin, Jr., Alexandria, for defendants-relators.

Jeron J. LaFargue, Sulphur, for plaintiffs-respondents.

FOURNET, Chief Justice.

A writ of certiorari was granted in this case but the review was "limited to the issue of plaintiff Gunter's right to recover twice for medical expenses," on the showing made by applicant for the writ that a conflict exists between decisions of the Courts of Appeal of the State and that the question has not yet been decided by this Court.

The instant action, ex delicto, is for damages for personal injuries sustained in an automobile accident. The plaintiffs, Mr. and Mrs. David Gunter and Mrs. Hazel Lord, were injured through the negligent operation of the car by its driver, Mr. Oscar E. Lord, husband of Mrs. Hazel Lord.[1] The State Farm Mutual Automobile Insurance Company, insurer of Mr. Lord, is the sole remaining defendant, the suit as to Oscar E. Lord having been dismissed. The Trial Court, following the reasoning in Hawayek v. Simmons (Orleans Court of Appeal, 1956), 91 So.2d 49, 61 A.L.R.2d 1254, rejected plaintiff's demands for medical expenses on the ground that they had already been paid under the medical payments provision of the policy; the Court of Appeal, Third Circuit, reversed the Trial Court on this issue, and adopting the ruling in Distefano v. Delta Fire & Casualty Company, La.App. (1st Circuit, 1957), 98 So.2d 310, held that "the quantum of damages for liability under the general liability provisions should include medical and hospital expenses as specials, and a prior payment under the medical pay clause should not be set-off against the amount payable under the general liability provisions." The judgment was therefore amended to include medical expenses in amount of $1,074.60 ($669.60 past medical and $375.00 future medical) in the quantum of damages awarded Mr. Gunter, and in all other respects was affirmed. 132 So.2d 488.

The policy sued on, captioned Family Automobile Policy, Combination Form, under the section headed "Declarations," lists coverages (among others) for "A. Bodily Injury Liability," "B. Property Damage Liability," "C. Medical Payments," with specified limits of liability—

---

[1] In limiting the issue on review, we noted no error of law in the opinion, insofar as concerned the question of negligence vel non, on the facts found by the Court of Appeal.

in the case of medical payments, "$1,000 Each Person." A subsequent section, headed "Part I—Liability," deals with Coverages A and B, reciting that the defendant is obligated "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" because of bodily injury sustained by any person, and property damage, "arising out of the ownership, maintenance or use of the owned automobile * *." Coverage C, found under "Part II—Expenses for Medical Services," obligates the insurer "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services * * and necessary ambulance, hospital, professional nursing and funeral services:" as follows: "Division 1, To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom * * * caused by accident, while occupying or through being struck by an automobile; Division 2, To or for any other person who sustains bodily injury, caused by accident, while occupying (a) the owned automobile" while said automobile is being used by the named insured, by a resident of the same household, or by any other person with his

permission; or "(b) a non-owned automobile" if the injury results from "its operation or occupancy by the named insured" or its operation by his employee, or "its operation or occupancy by a relative * * *." Under the section headed "Conditions" is the declaration (Condition 7, applicable to Part II, quoted above) that "* * * [paragraph 2] The company may pay the injured person or any person. or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except. hereunder, of the company."

The defendant-relator, State Farm Mutual Automobile Insurance Company, in this. Court invites attention to the fact that the appellate courts which first considered the question of double recovery for medical expenses incurred by a plaintiff—while reaching opposite results—both approached the matter from a negative standpoint, without taking into account the positive law of our State; thus, when the issue was first presented (1956) the Orleans Court of Appeal considered that the plaintiff should *not* be allowed to recover *more* than his damages from the insurer,[2] and a year later the Court.

2. In that case, Hawayek v. Simmons, 91 So.2d 49, the Court reasoned: "But we do not believe that plaintiff is entitled to recover both under the medical payments clauses and the liability clauses for medical expenses incurred in one and the same accident. It would be inequitable to construe the policy contract so as to allow the plaintiff to collect double the amount of his damage. It strikes us that

---

of Appeal for the First Circuit, in deciding the same question, considered that the insurer of the defendant ought *not* be allowed to collect premiums for *two* coverages without paying under both;[3] and that subsequent opinions adopted, without much discussion, one view or the other.[4] Invoking our positive law, as embodied in articles of

a reasonable interpretation of the policy clauses would be that plaintiff had the choice of either claiming the amount of the medical expenses under the medical clauses, or the liability clauses of the policy, but certainly not under both." (91 So.2d at 56)

3. In the case referred to, Distefano v. Delta Fire & Casualty Company, 98 So. 2d 310, the Court observed: " * * * If Delta had two separate policies, one granting liability coverage and one granting Medical Payments Coverage, that would be no different than the situation as it presently exists where both coverages are furnished under the same policy. We see no logical reason for the conclusion to be properly reached that Delta, having paid what it was obligated to pay under a contractual obligation, should be relieved of paying what it otherwise would have been obliged to pay under an obligation sounding in tort." (98 So.2d at 313) In reaching this conclusion the Court rejected the rule of the Hawayek case, and was obviously impressed with the rationale of Severson v. Milwaukee Automobile Ins. Co., 265 Wis. 488, 61 N.W.2d 872, 42 A.L.R. 2d 976, where the Wisconsin Supreme Court, in construing a policy "embracing three coverages," one of which was Medical Payments, held that "Although contained in one policy, the coverages were divisible and separable, and Coverage K [medical payments coverage] must be construed as a separate contract;" that it is "an absolute agreement to assume or pay the medical payments"—the sole exclusion being "benefits * * * payable or required to be paid under any workmen's compensation law." The distinction is to be noted, however, as appears from the opinion, that the medical payments previously recovered by the plaintiff in that suit were the result of

an action against the owners of two separate automobiles and against the insurer of one of them, whereas the cited case had as a party thereto only one of the three defendants in the first action, i. e., the insurer-defendant. The Court permitted a second recovery of medical expenses.

4. Other appellate court cases (previous to the instant suit) where the precise question has been decided are: (a) Bordelon v. Great American Indemnity Co., La.App., (Third Circuit, 1960), 124 So. 2d 634, where the Court said that in the absence of a policy clause clearly excluding such liability, "the tortfeasor's insurer is not entitled to credit against a recovery in tort for amounts received by the injured person paid to him pursuant to the insurer's contractual liability for medical expenses under a separate insuring agreement for which a premium is also charged." (b) Dumas v. United States Fidelity & Guaranty Co., La.App., (Third Circuit, 1960), 125 So.2d 12, to the same effect; but this case was annulled and reversed, and suit dismissed, on other grounds, without consideration of the issue at hand, 241 La. 1096, 134 So.2d 45; (c) Constantin v. Bankers Fire & Marine Insurance Co., La.App., (Third Circuit, 1961), 129 So.2d 269, which held that the cancelled check given by the defendant insurance company in payment of the medical expenses, despite the endorsement to the effect that said endorsement represented "a full release and satisfaction of all medical payments arising out of the occurrence described on the face thereof," was "merely payment by the insurer of its contractual obligation to pay the plaintiff for the medical expenses incurred in the accident." In Bowers v. Hardware Mutual Casualty Company, La.App., (Second Circuit, 1960), 119 So.2d 671, the Court, ob-

the Louisiana Civil Code, relator cites, as fully controlling here, the provision by which a wrongdoer is obliged to repair the damage done to another,[5] and submits that the law intends an injured person to be compensated, but no more; observing that in Louisiana the courts do not allow punitive damages, but only compensatory damages in an action for tort,[6] relator argues that respondent has no further "damages" to be "repaired" since obligations are extinguished by payment,[7] and may be discharged by any person concerned, such as a surety.[8] Aside from the above provisions, other articles of the Code concerned with equitable principles [9] are relied upon as not allowing respondent to enrich himself by recovering again of defendant an amount which has already been paid to him by the same defendant.

The plaintiff-respondent, on the other hand, stands on the proposition (asserted first by the Court in the Distefano case, supra) that a claim based on the liability feature of an insurance policy is a tort claim while a claim based on the medical payments feature of an insurance policy is a claim sounding in contract; and argues that these are two separate insurance agreements for which separate premiums are paid—the second (medical payment) providing coverage regardless of fault on the part of the insured. In answering relator's argument, respondent submits that if it should be held that under the "liability policy" these medical payments are already covered, it is the defendant insurance company which has been unjustly enriched by receiving a premium for something it did not have to pay.

Sober reflection shows an inaccuracy in the above reasoning, induced perhaps by the facility of our direct action statute (R.S. 22:655) by which injured parties may pro-

serving that defendant had paid medical expenses to plaintiff or for her account under the special medical payment provisions of the policy, rejected her contention that she was entitled to receive an identical amount under the general liability provisions of the same policy, stating that the authorities cited for the point have no application "as the policy provides that the amount payable under its general liability provision shall be reduced by payments made under the medical expense features of the contract." (119 So.2d at 676) The exact wording of that provision is not incorporated in the opinion, but defense counsel state that the record shows the policy there sued on was susbtantially similar in its provisions to the instant contract and

call attention to paragraph 2 of Condition 7 (quoted in the body of this opinion). A case often cited, but which should be differentiated, is Warren v. Fidelity Mutual Insurance Co., La.App. (First Circuit, 1957), 99 So.2d 382, wherein the Court held that the insurer of the tort feasor was not entitled to a credit against the "special damages" item (consisting of medical expenses) for payments made under the medical payments clause of *another* insurer.

5. Civil Code, Article 2315.
6. Breaux v. Simon, 235 La. 453, 104 So. 2d 168; Spearman v. Toye Bros. Auto & Taxicab Co., 164 La. 677, 114 So. 591.
7. Civil Code, Article 2130.
8. Civil Code, Article 2134.
9. Civil Code, Articles 1964, 1965.

ceed against the liability insurer as if it were itself the tort feasor, rather than a contractual indemnitor. It is clear that the provision covering liability based on fault and insured under coverages A and B is no less a contractual obligation, as between the insurer and the insured, than the provision of the medical payments coverage under C, since both are based solely on contract; the direct action procedure merely omits one step and allows a plaintiff to make his proof of the insured's liability in the same action in which he seeks to prove the contractual obligation of the insurer to indemnify the insured.

To ascertain the common intention of the parties and to give effect thereto—a cardinal rule in the interpretation of contracts, and incorporated in our Civil Code, Article 1945 —we turn to an examination of the policy provisions, bearing in mind that "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act," Article 1955; in other words, "The contract must be viewed as a whole, and the intention of the parties gathered from all its parts, to the end of giving practical effect to the instrument in the way intended * * *." Calhoun v. Ardis, 144 La. 311, 313, 80 So. 548, 549. See Civil Code, Articles 1764, 1945–1962; Long Bell Petroleum Co. v. Tritico, 216 La. 426, and cases cited at 454, 43 So.2d 782.

After studying and analyzing the sections of the agreement describing the coverage under A and B, and under C, we think it clear that the inducement insofar as concerned the insured was twofold: (a) financial coverage, within the limits stated, in case of injury to persons or property through his fault arising out of the operation, maintenance and use of the named automobile or a "non-owned" automobile as therein defined; and (b) a financial cushion for medical, hospital and funeral expenses, regardless of fault on his part, for (1) himself and each relative who sustains bodily injury "while occupying or through being struck by *an automobile*" (emphasis ours), and for (2) any other person who sustains bodily injury through accident while occupying the *owned automobile,* if the same is being driven by the insured, a resident of the same household, or other person with his permission, or a *non-owned automobile,* if the bodily injury results from its operation or occupancy by the insured or its operation by his employee as his agent, or its operation or occupancy by a relative.[10] An inducement for procuring the medical payments coverage was the knowledge on the part of the insured that if a person were injured, provision was made in a substantial amount

10. The coverage afforded under "C" is of such scope that respondent's argument about collection of a premium without obligation to pay on the part of the insurance company loses much of its applicability.

for medical expenses incidental to the injury. The protection afforded the "other person who sustains bodily injury through accident," even though the conduct of the insured be blameless, is understandably conducive to a feeling of satisfaction that some assistance is offered, since concern and regret for an injury, though unintentionally caused and without negligent conduct, is the usual, normal reaction. Moreover, the injury sustained is immediate and calls for instantaneous assistance; fault is often dependent on many considerations which cannot be quickly assessed; an insured with medical coverage is freed from concern as to his tortious liability in that respect.

The result follows, when the instrument is viewed as a whole and the intention of the parties gathered from all its parts, that it was not contemplated that an injured person should collect his medical expenses twice, i.e., that having already been paid such expenses at the instance of the insured by the insurance company following the accident, that he should be again awarded the same medical expenses as an incident of the tort action. His damages, in that respect, have been repaired. We think the parties to the contract clearly intended coverage C to provide medical payments in all cases, up to the stated limit, but, in the event of tortious conduct on the part of the insured, that such payments would satisfy the claim for damages normally awarded for those expenditures.

This is not to say, of course, that were the injured party wholly or partly indemnified for hospital or medical care by insurance effected and paid for by him or through some other source, and toward which the wrongdoer did not contribute, that the latter would benefit therefrom by a reduction of his damages in a suit by the injured party. Warren v. Fidelity Mutual Insurance Co. (La. Appeal), 99 So.2d 382; see 15 Am.Jur. 617, Damages, Sec. 201, and pocket part; and 13 A.L.R.2d 355.

For the reasons assigned the judgment of the Court of Appeal, in so far as it amends the judgment of the District Court, is set aside; and the judgment of the District Court is affirmed.

140 So.2d 374