SAMUEL, Judge.
These two suits, consolidated for trial in the district court and for argument here, arise out of an intersectional collision on October 16, 1960, between an automobile driven by Oville Breaux, Jr., a minor 17 or 18 years of age, in which car Sandra Bourgeois, also a minor, was the sole passenger, and an automobile driven by Nathaniel (erroneously identified in the Bourgeois petition as “Nathan” instead of Nathaniel) Francois in which his wife, Willie Marie Jones Francois, was a passenger.
One suit, No. 971 of our docket, was filed by Hendrix Bourgeois, Sr., individually and on behalf of his minor daughter, Sandra, against Nathan (Nathaniel) Francois, Oville Breaux, Sr., father of the driver of the car in which the young lady was a passenger, and the Marquette Casualty Company, liability insurer of the Breaux automobile, seeking damages for personal injuries suffered by Sandra in the accident and for medical, hospital and other expenses incurred by her father as a result of such injuries. The other suit, No. 972 of our docket, was filed by Nathaniel Francois and his wife against Oville Breaux, Sr., individually and as administrator of the estate of his minor son, and the Marquette Casualty Company. In that suit Francois seeks to recover for injuries to himself, property damages to his car and medical and hospital expenses for himself and his wife and Mrs. Francois seeks damages for the injuries she suffered in the accident. In that second suit Oville Breaux, *385 Sr., individually and as administrator of the estate of his son, reconvened against Nathaniel Francois for medical expenses and damages to his automobile and for personal injuries suffered by Oville Breaux, Jr.
There was judgment in the trial court in the first suit (No. 971 of our docket) in favor of plaintiff, Hendrix Bourgeois, Sr., individually, and against the three defendants, in solido, in the sum of $588.80 and in favor of plaintiff, as administrator of the estate of his minor child, Sandra, and against the three defendants, also in solido, in the sum of $3,500.00 There was judgment in the trial court in the second suit (No. 972 of our docket) in favor of the two defendants and against the plaintiff, Nathaniel Francois, dismissing his demand, in favor of the other plaintiff, Willie Marie Jones, wife of Nathaniel Francois, and against the two defendants, in solido, in the sum of $5,000.00, and in favor of the defendant in reconvention and against the plaintiff in reconvention, dismissing the reconventional demand. Oville Breaux, Sr., the Marquette Casualty Company and Nathaniel Francois have appealed from the judgments.
Five witnesses testified regarding the occurrence of the accident. They were: the two drivers, Sandra Bourgeois, Mrs. Francois and Irving Trosclair, a deputy sheriff who made the police investigation. As a result of a head injury Sandra was unable to remember what had occurred and Mrs. Francois knew very little about the facts except that she testified her husband had the green light, a statement contrary to one she had made previous to trial. The material part of the deputy’s testimony was that upon his arrival on the scene shortly after the collision had taken place he talked to both drivers. In answer to his questions Breaux had said that he had a green arrow and Francois had admitted that he had run a red light. Francois was injured at the time he was questioned by the deputy and at the trial he denied having made the statement.
The pertinent portions of the testimony of the two drivers reveals:
The accident occurred shortly after 12 a. m. on a clear night in the intersection of the West Bank Expressway and Bara-taría Boulevard in Marrero, Louisiana. The expressway contains four lanes, two for traffic traveling in a westerly direction and two for traffic traveling in an easterly direction. The two sets of traffic lanes are separated by a wide neutral ground. At the intersection there are two additional lanes, on opposite sides of the neutral ground and on opposite sides of Barataría Boulevard, each resulting from a paved indentation in the neutral ground, which are reserved for expressway traffic making a left turn into Barataría Boulevard. Barataría Boulevard has no neutral ground and contains two lanes for traffic proceeding in opposite directions. The intersection is controlled by six semaphore standards, two, controlling west bound expressway traffic, one of which is on each side of the west bound lanes of the expressway and west of the boulevard, two, controlling east bound expressway traffic, one of which is on each side of the east bound lanes of the expressway and east of the boulevard, and two in the neutral ground, one on each side of Barataría Boulevard, controlling traffic making a left turn from the expressway into the boulevard. The speed limit on the expressway at the intersection is conceded by all litigants to be 50 miles per hour.
Francois, with his wife as a passenger in the front seat, was driving west on the expressway intending to continue on that highway through the intersection. Breaux, with Miss Bourgeois as a passenger, was driving on the expressway in the opposite or easterly direction intending to make a left turn into Barataría Boulevard. Breaux’s testimony is that in response to a red signal he stopped at the intersection in the lane reserved for traffic making the left turn and waited for his signal, a green arrow from the neutral ground standard on his side of the boulevard, to turn in his *386 favor. At that time he saw the approaching Francois car, which was almost directly ahead in his clear view and which was then 250 or 300 feet away traveling at a speed of between 40 and 55 miles per hour. He saw the Francois car once again as, or just before, the signal light changed to the green arrow in his favor and at that time Francois was 100 to 150 feet away from the intersection and still traveling at the same speed of 40 to 55 miles per hour. Breaux began making his turn into Barataría Boulevard as soon as he had the green arrow. Driving from his stopped position he had almost completed the turn and the greater part of his car, i. e., all but a small part of the rear, was in the expressway west bound through lane nearer the neutral ground when it was struck between the right front fender and right front door by the Francois vehicle. From the time he started moving and making the turn with the green arrow in his favor until the impact occurred he never looked towards the lane from which Francois was coming and did not again see that car after observing it for the second time prior to starting to move.
Francois testified that he was traveling at a speed of approximately 45 miles per hour (he said 45 in one or two instances and 40 in others), that he proceeded into the intersection with the green light in his favor and that he struck the Breaux automobile just after he entered the intersection. He further testified he never did see the Breaux vehicle and never slackened his speed.
Although the record does not contain any reasons for judgment or findings of fact, we are satisfied that the trial judge found as a fact, as we do, that Francois entered the intersection on a red light. Accordingly, Francois was guilty of negligence and contributory negligence. He is liable in the suit in which he is a defendant and cannot recover in the suit in which he is a plaintiff. We are also of the opinion that, even accepting all of his own testimony as being true, young Breaux was guilty of negligence and contributory negligence requiring the dismissal of the reconventional demand made by his father in suit No. 972 of our docket and a holding of liability on the part of his father and Marquette as defendants in both suits.
Notwithstanding the fact that under our traffic light system a motorist generally has the right to rely upon a favorable light, he is not thereby relieved of the necessity of exercising some care and caution; in the face of known and imminent danger he cannot rely upon the right-of-way accorded to him. See Kientz v. Charles Dennery, 209 La. 144, 150, 24 So.2d 292, 294; Seiner v. Toye Bros. Yellow Cab Co., La.App., 18 So.2d 189, 191.
In Roth v. Lloyd S. Gaubert, Inc., La. App., 144 So.2d 675, 677, we express the rule as follows:
“It is true that a green traffic light does not relieve a motorist from the general duty imposed upon him to operate his vehicle with a careful and prudent regard for the safety of others. But modern traffic being what it is, to a large extent a motorist is compelled to operate his vehicle in the belief that the traffic laws will be obeyed by others and, except under extraordinary circumstances, he has a right to assume that a traffic light signal in his favor will be observed, understood and obeyed by other drivers.”
The “extraordinary circumstances” referred to in the foregoing quotation are present in the instant case. Here the approaching Francois car, almost directly ahead of Breaux and in his clear view, was seen by him while he was stopped at the intersection waiting for the red light to change to a favorable green arrow, when that car was 250 or 300 feet away traveling at a speed of between 40 and 55 miles per hour. Before proceeding he saw the car once again. At that time it was only 100 to 150 feet away from the intersection and still traveling at the same speed of 40 to *387 55 miles per hour. Then, as soon as he had the green arrow in his favor, he began his left turn without making any further attempt to observe the approaching car and without again observing that car.
We are convinced that under similar circumstances a reasonably prudent driver would have realized the Francois car either could not or would not stop for the intersection. This should have been apparent to Breaux the second time he saw that car, when it was 100 to 150 feet from the intersection and traveling 40 to 55 miles per hour or 59 to 81 feet per second. Depending on how much more than 40 miles per hour the Francois vehicle was traveling and how much more than 100 feet it was away from the intersection, at that time it was either impossible or very nearly so for it to stop before entering the intersection even if its brakes were applied immediately. Certainly Breaux was under an obligation to again look at the approaching car before proceeding into its lane of travel. He neglected to do so. And considering the time consumed by Breaux in making even the first part of his turn together with the unslackened speed and lessened distance from the intersection of the Francois automobile, we are satisfied that in less time than it took Breaux to travel the distance of the width of the neutral ground it was clearly impossible for the Francois car to be stopped before it entered the intersection. See Speed Charts 14 Tul.L.Rev. 503 and 9 C Blashfield’s Cyclopedia of Automobile Law and Practice, § 6237, pg. 413.
As stated in the rule quoted above, a green traffic light does not relieve a motorist from the duty of operating his vehicle with a careful and prudent regard for the safety of others. And in the instant case Breaux had no right to assume the light signal would be obeyed by Francois; to the contrary, he knew or should have known that Francois was not going to, and could not, obey the signal. Breaux not only drove into a known and imminent danger, he drove into a certain collision. His actions constitute negligence despite the fact that he had a favorable light.
Marquette Casualty Company contends, alternatively, that the award to Hendrix Bourgeois, Sr., individually, of $588.80 for medical, hospital and other expenses should be decreased by the sum óf $535.00.
Marquette argues it paid Bourgeois the sum of $475.00 under the medical pay provisions of that company’s liability policy with Breaux and the judgment rendered by the trial court erroneously fails to allow credit for the payment. The contention is correct. The record reflects that such a payment was made and under our law an insurance carrier cannot be condemned to pay medical and hospital expenses twice for the same person, who is injured in the one accident, under both the medical provisions and the general liability provisions of the same policy. Wise v. Agricultural Insurance Company, La.App., 140 So.2d 662; Gunter v. Lord, 242 La. 943, 140 So.2d 11. Accordingly, the award to Bourgeois is reduced by the sum of $475.00.
The balance of the sum which we are urged to disallow, a $60.00 item also included in the award of $588.80, was expended by Bourgeois for domestic help during a part of the period of Sandra’s recovery. Marquette contends that the $60.00 was paid for domestic help unconnected with the young lady’s illness. We do not agree. The evidence establishes to our satisfaction that a Mrs. Bourg was employed by Bourgeois to assist his wife during Sandra’s recovery and that Sandra’s condition necessitated that employment.
For the reasons assigned, the judgment appealed from in case No. 971 of our docket is amended so as to decrease the award to Hendrix Bourgeois, Sr., individually, from the sum of $588.80 to the sum of $113.-80. As thus amended, and in all other respects, the judgments appealed from are affirmed; costs of these appeals to be paid by the appellants.
Amended and affirmed.