HARDY, Judge.
This suit was instituted by the five plaintiffs, major children of their deceased mother, Mrs. Katie P. Gandy, praying for damages resulting from the death of their said mother following -an automobile collision. Named as defendants were Casualty Reciprocal Exchange as the liability insurer of plaintiffs’ father, C. P. Gandy, Sr., with whom his wife was riding at the time of the collision, and W. C. Feazel and Zurich Insurance Company, owner and insurer of an automobile driven by Feazel’s employee, Forest R. McCallister. After trial there was judgment in favor of plaintiffs against Casualty Reciprocal Exchange for the maximum coverage of $5,000.00 under Gandy’s policy of insurance, subject to a credit for funeral and medical expenses to the extent of $1,245.10 previously paid by the insurer through drafts payable jointly to the insured and the furnishers of said services. Plaintiffs’ demands against Feazel and Zurich were rejected, and from this judgment plaintiffs have appealed.
In support of this appeal, plaintiffs specify error in the failure of the district judge (1) to find McCallister, the driver of the Feazel vehicle, guilty of concurrent negligence which proximately contributed to *476 the fatal accident, and (2) in allowing credit for medical and burial expenses paid by Casualty Reciprocal Exchange. We proceed to a discussion of these issues in the order set forth.
The accident occurred in the southeast quadrant of the intersection of Louisiana Highways 147 and 155 in Bienville Parish. The Gandy car was being driven east on Highway 155 and was struck in the right center by the Feazel car driven by Mc-Callister north on Highway 147. Highway 147 is the superior thoroughfare protected by stop signs erected on Highway 155 near the approach to the intersection. At the time of occurrence of the accident the maximum legal speed limit was 60 miles per hour, though at the time of trial it was brought out that such limit had been reduced to 50 miles per hour. The stop sign located on Highway 155 on the west side of Highway 147 was shown to have been approximately 163 feet distant from the center line of Highway 147 and at this point motorists did not have a clear view of Highway 147 to the south. According to the testimony of Mr. Gandy, he brought his car to a stop at the stop sign and then proceeded toward the intersection at a speed which he estimated to be approximately 15 miles per hour. Although he testified that he made observation for approaching traffic, he did not see the Feazel car approaching from the south and drove squarely into its path, despite the fact that it is established that he could have had a clear view of traffic on Highway 147 from the south for a distance of some 1,000 feet, more or less, at a time when he was at least 50' feet from the intersection. No issue has been made before this court as to the negligence of Gandy, which is conceded by counsel for Casualty Reciprocal Exchange.
The basis of plaintiffs’ charges of negligence against McCallister are that he failed to slow down or stop when he observed that Gandy was not going to bring his car to a stop; that he was driving at a grossly excessive rate of speed, and that he failed to sound his horn after observing that Gandy was not looking in his direction.
Inasmuch as Gandy never did observe the McCallister car, the only real eye witness who testified on trial of the case was McCallister himself. The gist of the testimony of this witness was that he was driving at 50 to 60 miles per hour (although it was brought out that he had informed the investigating State Trooper immediately following the accident that his speed was 60 miles per hour) ; that he observed the approach of the Gandy car at a time when both vehicles were approximately equidistant from the intersection and some 75-to 100 feet therefrom; that after observing that Gandy was not looking in his direction and that he did not appear to be bringing his car to a stop, he applied his brakes, but was unable to avoid the collision.
The testimony of Trooper Whitman, who investigated the accident, fixed the point of the impact as being in the proper lanes of travel of the respective vehicles. The Trooper measured the skidmarks of the McCallister vehicle which extended for some 68 feet prior to the point of impact and then for an additional 54 feet, skidding sideways, before it came to a stop.
In a brief statement of reasons for judgment dictated into the record following trial, the district judge properly observed that McCallister was entitled to assume that the Gandy car would stop and accord the right-of-way to traffic on the superior highway. The trial judge further concluded that he could not find any negligence on the part of McCallister.
It is earnestly contended by counsel for plaintiffs that McCallister’s testimony as to the distances of the two cars is obviously erroneous. We are completely in accord with this conclusion, for it is clear that two cars approaching an equi-distant point at respective speeds of 15 and 60 miles per hour could not have reached such point at the same time. However, we can only consider that this erroneous estimate *477 of distance has no material bearing upon the issue as to McCallister’s negligence. We think it is evident, from an examination of the record, that as soon as McCallister observed that the Gandy car was not being brought to a stop, which observation must have been made when the Gandy car was much nearer to the intersection than 75 feet, he forcefully applied his brakes. The fact that this action was unsuccessful in avoiding the collision does not serve as evidence of negligence.
Nor can we find that the record sustains the contention that McCallister was driving at a speed in excess of the legal rate. The only testimony on this point which conflicts with the direct testimony of McCallister was that of Dr. L. G. Raub, head of the Department of Physics of Centenary College. While we have the utmost respect for the qualifications and abilities of this witness in the field of Physics, we cannot be impressed with the nature of his testimony in the instant case. This is not due to any failure on the part of the witness, but is predicated upon the facts, established in part by his own admissions, that certain important factors in connection with his computations were unknown. It is also evident that other details which were the basis for the hypothetical question presented are in serious dispute, and cannot be regarded as having been established. We refer to the observations made in the opinion in Brown v. Benjamin (La.App., 2nd Circuit, 1960), 120 So.2d 325, with respect to the extreme care which we feel should be exercised in evaluating the testimony of expert witnesses in connection with automobile accidents.
McCallister’s failure to sound his horn cannot be considered, under the circumstances established in this case, as negligence, particularly in view of the fact that, after perceiving the danger, he was gripping the steering wheel and exerting the utmost pressure on his brakes. Nor would it be proper to conclude that the sounding of the horn would have alerted Gandy to the danger in time to bring his vehicle to a stop.
For the reasons above noted, we are unable to reach the conclusion that the district judge was in error with respect to his factual finding on this point.
A serious and unusual question is presented with respect to the asserted erroneous allowance of a credit for amounts paid by Casualty Reciprocal Exchange. Both the district judge and counsel for Casualty Reciprocal Exchange rely upon the pronouncements in Wise v. Agricultural Insurance Company, (La.App., 2nd Circuit, 1962, writs denied), 140 So.2d 662, and Gunter v. Lord, 242 La. 943, 140 So.2d 11. We do not regard the principles enunciated in the cited cases as being appropriate to the facts in the instant case. Reduced to the simplest terms, the cited cases are authority for the conclusion that an injured person cannot collect twice for medical expenses under the coverage afforded in the same policy. In the case before us, these plaintiffs neither claimed nor have they received anything in the nature of medical and burial expenses. Their suit is purely one for damages, under LSA-C.C. Article 2315, resulting from mental pain, suffering, shock, loss of love, affection and companionship by reason of the death of their mother, allegedly caused by the negligence of the parties defendant.
On trial of this case the following stipulation was entered into:
“MR. HALL: If the Court, please, we would like to get these stipulations out of the way first. It is stipulated by and between Casualty Reciprocal Exchange and the plaintiffs that at all times pertinent hereto Casualty Reciprocal Exchange had issued to and had in full force and effect for Clarence P. Gandy a policy of automobile liability insurance on the automobile driven by Mr. Gandy at the time of the accident; that said policy had limits of liability of $5,000.00 for damages to one *478 person, $10,000.00 for damages arising out of one accident, and medical payments coverage of $2,000.00; that Casualty Reciprocal Exchange has paid medical and funeral expenses as a result of the injury to and death of Mrs. Gandy in the total amount of $1,245.10; that all drafts issued by Casualty Reciprocal Exchange in payment of these medical and funeral expenses were issued jointly to C. P. Gandy, Sr., and the respective hospitals and funeral home.
“MR. GODFREY: I would like to know if Your Honor please, if I can amend the stipulation to show, if it is agreeable to counsel, to show that the amount of medical expenses and funeral expenses that have been paid have been paid under the medical payments features of the Gandy policy.
“MR. HALL: We have no objection to that.” (Emphasis supplied.)
Although the policy is not in the record, it is evident from the emphasized portions of the above stipulation that the limited coverage of liability in the sum of $5,000.00 was in addition to a separate medical coverage of $2,000.00. Under the authority of the Gunter and Wise cases, if Gandy, the insured, had been a successful party plaintiff he could not have recovered the medical payments for which he was liable under the special Medical Payment provision of the policy and again under the general tort liability feature. A further distinction between this and the cases cited supra lies in the fact that the payments under the medical coverage provisions of the policy were made to the surviving husband jointly with the furnishers of the services and he is not a party to the suit.
 We note the argument by counsel for Casualty that these plaintiffs are the sole heirs of their mother and have unconditionally accepted her succession by the filing of this suit, the effect of which is to render them liable for the debts of their mother’s succession, citing LSA-C.C. Articles 988 and 1013. In our opinion, this argument is without merit. All, or any one, of these plaintiffs is accorded the right to recover in an action of this nature without respect to heirship. We have not been cited, nor have we been able to find, any authority which would indicate that the plaintiffs would be denied recovery in this nature of action, even if they refused the succession of their deceased mother. It follows that they are entitled to recover in a tort action in the full amount of the liability coverage provided by the policy.
For the reasons assigned, the judgment appealed from is amended by increasing the principal amount allowed to each of the named plaintiffs to the sum of $1,000.00, and, as amended, the judgment appealed from is affirmed, at the cost of defendant-appellee, Casualty Reciprocal Exchange.