REDMANN, Judge.
Plaintiff appeals the dismissal on the merits of her suit against an automobile insurer for her husband’s personal injury and wrongful death.
The main issue is liability. If liable, defendant argues deductibility from its $10,-000 liability limit of $2,000 medical payments made under the same policy, although damages would exceed the sum of both limits.
FACTS
Plaintiff’s husband, Peterson, was injured by and within two weeks died from a fall from the back of an open pick-up truck driven by defendant’s insured, McNutt. The only witnesses were McNutt (plaintiff’s brother-in-law) and a friend, Lonne-gan.
The three men, having inoculated cattle at Peterson’s barn, intended to drive in Mc-Nutt’s truck a sixteenth mile to Peterson’s farmhouse. McNutt drove the truck through a gate from the barn area and stopped while Peterson closed the gate. Peterson did not join McNutt and Lonne-gan in the driver’s compartment (because his pants were heavily soiled), but climbed into the back of the truck. (He had ridden in the back “many a time” before this incident.)
The tail-gate of the truck was in a horizontal position. Of the two witnesses’ testimony in respect to Peterson’s position in the truck, that of Lonnegan is more favorable to defendant. Asked whether Peterson’s “feet were dangling over the end of the tailgate”, Lonnegan answered, “Well, I don’t really know. I couldn’t very well answer that because he could have. His feet were, you know, just out like that (demonstrating). They were partially out of the truck, so they could have been dangling over. It’s been too long a time for me to really give you a correct answer to that.” (McNutt said Peterson’s feet were “right on the end.”)
The area between the gate and the road was muddy and slippery. The distance from the stopped truck to the road’s edge was no more than 20 feet. Both McNutt and Lonnegan testified that, after Peterson situated himself in the truck and called to McNutt to “take it away”, the truck wheels spun as McNutt began to accelerate from his stopped position. McNutt testified “I could have stopped, but I didn’t see no need to stop. I just started — the wheel started spinning. I wasn’t down in no rut or stuck on nothing. I was moving straight on out and going out into the road.” Both witnesses testified of feeling the spinning wheel “grab” on reaching the hard surface of the roadway (at which point the truck was making a right turn), resulting in a sudden movement of the truck.[1] The witnesses almost immediately thereafter noticed that Peterson was no longer in the back of the truck and therefore McNutt stopped, perhaps as little as 35 feet from where they found Peterson. Peterson was found “lying in the roadway just like a plank”, about 15 feet from the gate on the left side of and almost off the road.
LIABILITY
From our reading of the record we conclude: (1) Peterson was seated at a *833 reasonable location within the truck for the sixteenth mile trip anticipated; he was not seated on the tailgate. (2) As McNutt should have foreseen, the spinning of the truck wheels in slippery mud thrust the truck forward upon reaching the hard road surface. (3) Because of the possibility of causing Peterson to fall, and because he had a duty not to injure Peterson, McNutt should have released his accelerator, in the exercise of ordinary prudence, upon recognizing that the wheels were spinning, instead of continuing forward (even though the spinning had not yet caused sideways skidding).
There remain the questions whether Mc-Nutt’s negligence caused Peterson’s fall and, if so, whether Peterson was himself contributorily negligent.

Causation

Except for Lonnegan’s casual reference to Peterson having “slipped off the damned truck”, no other cause is indicated in the record than the lurching of the truck as its spinning rear wheels hit the hard roadway while making a turn. To our minds, this lurching forward can explain how a passenger seated in the rear could be left behind, by inertia, as the truck lunged out from under him.
We cannot construe Lonnegan’s remark as inconsistent with the skidding-wheels cause. Lonnegan did not see Peterson fall off the truck. (Nor did McNutt.) In the context of Peterson having been seated not on an edge of the truck but with, at most, his extended legs projecting his feet over the tailgate, Lonnegan’s word “slipped” can not attribute some false step to Peterson.
On the record before us, there is no basis for any other explanation than the skidding wheels. It is possible that Peterson himself stood up or otherwise changed position to cause his fall; but, on this record, it is more probable than not that the truck lurching from the skidding wheels caused the fall. Thus McNutt’s fault did cause the injuries sued for.

Contributory Negligence

There are two possible faults by Peterson which might be thought contributory negligence. Of these we dismiss his mere riding in back of a truck, seated towards its rear, with the tail-gate unclosed, because this simple action evidently would not contribute to causing a fall from ordinarily expectable bumps.
The second possible fault by Peterson is that he too should have realized the wheels were spinning and would cause the truck to lurch, and thus should have taken some defensive measures. The problem with charging Peterson with lack of proper defensive response is that, from the record before us, there is nothing one could say he should have done that would have saved him. It is pure speculation to suppose he might have lunged to grasp one side of the truck, or in some other manner prevented his fall.
Our case is analogous to Brantley v. Brown, La.1973, 277 So.2d 141, 142, in which the court concluded that plaintiff youth’s riding on an automobile fender “played no causative role in the accident.” The court summarizes applicable principles of assumption of risk and contributory negligence, stating, in part: “An outrider on a vehicle assumes only such risks as are ordinarily incident to his position. He does not assume the risk of negligent driving on the part of his driver, as he is ordinarily entitled to rely reasonably upon his driver’s exercise of ordinary care.” Id. at 143.
We conclude the trial judge was faced with evidence of causative fault by defendant’s insured, and no evidence of contributory negligence. In our opinion, no other view is supported by this record. The judgment of no liability must be reversed.
DEDUCTIBILITY OF MEDICAL PAYMENTS
Defendant stipulated that judgment against a tortfeasor for Peterson’s transmitted personal injury claim and for his widow’s wrongful death action “would exceed the amount of $10,000 over and *834 above any medical which may have been paid.” The policy limit of $2,000 medical had been paid. The stipulation is plainly that damages other than the $2,000 paid medical exceed the $10,000 bodily injury liability limit of the policy.
Defendant argues from Gunter v. Lord, 1962, 242 La. 943, 140 So.2d 11, that an injured party cannot recover from both bodily injury liability coverage and medical payment coverage and therefore defendant insurer’s maximum remaining liability is $8,000.
This is a palpable misconstruction of Gunter, which describes itself, in its first sentence, as “certiorari * * *. ‘limited to the issue of plaintiff Gunter’s right to recover twice for medical expenses’ * *.” As in Dowden v. Southern Farm Bur. Cas. Ins. Co., La.App.1963, 158 So.2d 399, and Beavers v. Butler, La.App.1966, 188 So.2d 725, writ refused 249 La. 739, 190 So.2d 242, in our case plaintiff does not seek “to recover twice for medical expenses.”
There is policy language, as in Beavers, limiting bodily injury coverage to $10,000 “for all damages, including damages for care and loss of services”. There is also language limiting medical payments coverage to $2,000 “for all expenses incurred by or on behalf of each person who sustains bodily injury”. Any argument that the $10,000 limit is all-inclusive would equally urge that the $2,000 limit is, for medical expenses, all-inclusive, i. e., that a tort victim with $5,000 medical could only recover $2,000 under medical coverage and nothing (for medical) under bodily injury, irrespective of the latter coverage’s limits. Obviously, neither limit affects any coverage except its own. The only prohibition against recovering under both bodily injury and medical is the logical one of Gun-ter against recovering twice for the same medical expense.[2]
DECREE
Judgment is reversed and there is judgment in favor of Mrs. Alma Hobbs Peterson individually[3] against State Farm Mutual Automobile Insurance Company for $10,000, with interest from judicial demand and costs.
STOULIG, J., dissents with written reasons.

. McNutt spoke of the truck being “thrown” to the left, “pitching” sideways. Lonnegan spoke of the truck having “chopped” or “flipped” or “swerved” around on the slippery mud; it “swung to the outside”. It must, however, be noted that Lonnegan told an investigator two weeks after the accident that Peterson “just slipped off the damned truck and fell out on the highway.”

. This prohibition of duplicate recovery is reinforced by the present policy’s provision sub-rogating the insurer to the medical expense beneficiary’s claim. The insurer thus precludes the question of duplicate recovery after payment of medical expense benefits, by depriving the subrogating beneficiary of all further right to pursue the subrogated claim. Our insurer does not argue that its subrogation to the. tort victim’s $2,000 medical claim includes subrogation against its own “insured” (note that the medical portion of the policy does not purport to protect him against liability), resulting in extinguishment by compensation (set-off) of both its $2,000 claim against its insured and $2,000 of its $10,000 obligation to indemnify its insured against liability. We note the possible argument because of C.O.P. art. 2164, obliging us to render whatever judgment is just on the record. However, we believe the obvious purpose of the subrogation is to defeat duplicate recovery of medicals, and the accomplishment of that purpose through the device of a seemingly otherwise incongruous concept of subrogation against the insurer’s “insured” appears unobjectionable. If, however, actual reimbursement were sought from the insured of the medical payment benefits for which the insured has paid an extra premium, the “sub-rogation” would presumably be limited to its obvious purpose of preventing duplicate recovery. Thus if damages exceeded limits on both bodily injury and medical expense coverages, a judgment against insurer and insured in solido, limited as to the insurer to the sum of its limits, would not enable the insurer to obtain judgment over against its insured for the medical limits on a showing of its “sub-rogation”.

. Both the husband’s surviving claim for his personal injuries and the right to recover damages for his wrongful death belong to the childless wife individually and not as his executrix; C.C. art. 2315.