LOTTINGER, Judge.
This is a suit in tort for physical injury and property damages sustained in an automobile accident. The petitioner is James F. Brunson, who sues individually and as administrator of the estate of his minor child, Carol M. Brunson, and his collision insurer, Southern Farm Bureau Casualty Insurance Company. The defendants are Enemencio M. Farias, Jr., the driver of the truck which was struck by the Brunson automobile, Delta Equipment & Construction Company, Inc., the owner of the truck, and Royal Indemnity Company, the liability insurer of the truck. The Lower Court awarded judgment in favor of Southern Farm Bureau Casualty Insurance Company and against the three defendants in solido in the sum of Five Hundred Forty-five and 59/100 ($545.59) Dollars. Judgment was rendered in favor of Mr. Brunson, in his capacity as administrator of the estate of his minor daughter, Carol M. Brunson, and against the three defendants in solido for One Thousand Five Hundred and No/100 ($1,500.00) Dollars, and in favor of Mr. Brunson individually and against the three defendants in solido for the sum of Sixty Thousand Six Hundred Twenty-seven and 02/100 ($60,627.02) Dollars. Royal Indemnity Company and Delta Equipment and Construction Company have taken appeals. Petitioner answers the appeal seeking an increase in the sums awarded by the Lower Court.
The record discloses that the accident occurred on March 15th, 1962 at approximately seven o’clock p. m. in a rural area near the City of Baton Rouge. A 1960 Ford automobile owned and operated by petitioner, James F. Brunson, collided with a large truck owned by Delta Equipment & Construction Company, Inc. At the time of the accident, Brunson was driving his automobile in a northerly direction on a road called Starling Lane. Mr. Brunson *658 claims to have been driving at a speed of approximately fifty (50) miles per hour and his young daughter Carol, who was the only other occupant of the Brunson automobile, was seated to the driver’s right. The collision occurred on a blacktop highway approximately twenty-one (2V) feet in width. At the time of the accident the Delta truck was stopped crosswise on the highway with its front bumper in the vicinity of the center line of the highway and the rear of the vehicle off the highway on the east side. The truck rested in a position approximately perpendicular to the highway, and there were no flares, reflectors or other signal devices on the highway to warn approaching traffic that the highway was blocked by the truck. The collision occurred when the Brunson vehicle was unable to stop prior to striking the truck.
While we are not favored with written reasons by the Lower Court, the evidence certainly indicates that there was no error in its holding the defendants responsible for the accident in question. The testimony of the driver of the truck, defendant Farias, shows that at approximately three o’clock p. m. on the day of the accident he was instructed to take a truck and a tilt trailer to Starling Lane to pick up a sheepsfool roller. He was accompanied by Thomas Charles Bates. The testimony indicates that they had difficulty in correctly loading the roller on the trailer, the difficulties encountered, however, are not pertinent to the accident in question. Important, however, is the fact that the truck had been stalled for a period between five o’clock to five-thirty o’clock p. m. and approximately seven o’clock p. m. at which time the accident occurred. During this period of some two hours the lights on the truck had been burning and the driver had attempted to start the engine, however, he testified that the battery was so low that it would not turn the engine over enough to start the motor. Of course the defendants claim that Mr. Brunson was negligent in not observing the presence of the truck, particularly inasmuch as all lights were burning. We do not feel that he was guilty of any negligence in this respect because the record indicates that the truck was stopped almost perpendicular to the direction of travel by Mr. Brunson and the headlights must have been burning very dimly due to the condition of the battery in the truck.
Another factor which indicates that the driver of the truck was guilty of the grossest type of negligence was the fact that the investigating officer, State Trooper Arthur J. LeBlanc, testified that the truck and trailer was actually stopped on an incline and was held there by a chock on the right rear wheel. He testified that as soon as the chock was removed the truck rolled backwards clear of the highway.
The defendants further claim negligence on the part of Mr. Brunson because of the fact that he did not see this large light colored truck standing in the highway in such time as to permit him to bring his approaching automobile to a controlled stop prior to the impact. But according to the testimony of Farias himself, just prior to the collision, an automobile passed the truck heading in a southerly direction toward Highland Road, thus going in a direct opposite to that of the Brunson car. Farias testified that as soon as the southbound vehicle and the Brunson car met and passed each other, Brunson applied his brakes and skidded into the truck. Therefore, according to the testimony of one of the defendants, the petitioner is relieved of negligence because certainly the glare of the headlights of the vehicle approaching him restricted his limit of vision. The record definitely establishes that the sole and proximate cause of the accident was the negligence of Farias in allowing his truck to remain in a precarious location across the highway and his failure to warn approaching traffic of the trap which had been set by him. We find no negligence on the part of Brunson.
Compared to the injuries of her father, Carol Brunson received relatively minor injuries. At the time of the accident she was fourteen years of age. Shortly after *659 the accident she was in a hysterical condition caused possibly by shock and by seeing a very large cut on the forehead of her father. She suffered bruises and lacerations to the face, a broken nose and a fracture of the transverse process of the vertebrae. She was required to wear a back brace for about five weeks. Her doctor described her back injury as painful but as neither severe nor as painful as her father’s. At the time of the trial, Carol still had a slightly raised scar on her nose. Her father was awarded One Thousand Five Hundred ($1,500.00) Dollars for her injuries.
As a result of the accident Mr. Brunson received a lengthy laceration of the forehead of such severe nature as to expose the skull. He also sustained a whip-lash injury or cervical strain of the neck. Shortly after the accident Mr. Brunson developed pain in the left hand and both feet. This was diagnosed as gout and he takes pills twice daily to relieve the pain. Mr. Brunson had no symptoms of gout before the accident but it has stayed with him ever since the accident.
In addition, on the morning after the accident Mr. Brunson complained of pain in his back. After several examinations, the pain was finally diagnosed as a ruptured disk. An operation was performed for removal of the disk after which petitioner stayed in the hospital for ten days. On the morning after the operation he developed esophagitis which caused terrific cramps in the chest and shortness of breath. To relieve the pain and suffering he was given hypodermic shots every three hours for a period of ten days. After leaving the hospital, petitioner was bedridden at his home for a month or six weeks. Mr. Brunson attempted to return to work about January of 1963, he would work only an hour or two at the beginning, and at the time of taking his deposition in May of 1963 he could work no later than twelve noon or one o’clock at which time he would leave the office and go home to go to bed. He testified that while at home he could not stay out of bed for more than about forty-five minutes at a time. He was still wearing a brace on his back at the time of his deposition.
Mr. Brunson was sales manager for Farm Bureau Insurance Companies in Louisiana. He has supervision of some fifty-five agents. Prior to the accident he did extensive traveling in his automobile and attended about three night meetings per week. Since the accident he has been unable to attend any night meetings and is unable to travel. He testified that after the accident and before the operation he operated at about fifty per cent of efficiency. After the operation his efficiency fell to about thirty or thirty-five per cent. According to Mr. Brunson he is unable to efficiently and productively perform the duties he performed prior to the accident. He remains on the job by sufferance of his employer. The record discloses that Mr. Brunson’s injuries would require extensive further treatment and at least one, possibly two, additional operations. The Lower Court awarded Mr. Brunson the sum of Sixty Thousand Six Hundred Twenty-seven and 02/100 ($60,627.02) Dollars of which the sum of Thirty Thousand and No/100 ($30,000.00) Dollars was for pain, suffering and disability and Twenty-five Thousand and No/100 ($25,000.00) Dollars was for loss of future earnings.
Our appreciation of the holding of the Supreme Court in Gaspard v. LeMarie, 245 La. 239, 158 So.2d 149, is that the function of the reviewing Court is simply to determine whether the present Trial Court award is manifestly excessive or manifestly insufficient under all the circumstances of the present case. In other words the decision of the Lower Court as to the amount awarded should not be disturbed in the absence of manifest error. Certainly in the present case we believe that no such error was shown, as a matter of fact, considering the nature of the injuries received by young Carol and her father, we believe that the Lower Court was substantially correct in the amounts awarded for such injuries.
*660 For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.