McBRIDE, Judge.
This is one of the three suits arising out of the automobile accident discussed in the matter of Champagne v. Southern Farm Bureau Casualty Insurance Company et al., in which an opinion and decree was handed down by us this date, La.App., 170 So.2d 226.
In the instant suit, Clifford J. Debautte, who was also a passenger sitting on the rear seat of the Robert vehicle at the time of the collision, claims- a large sum for personal injuries, expenses, etc. He implead-ed the same- defendants named in the Champagne case.
The charges of negligence, the counter-charges, the-defenses and-the issues in-the two suits are identical.
After the trial in the court below, plaintiff recovered judgment against all defendants jointly, severally and in solido for $1,-922.92 for medical expenses, $6,115.54 for loss of earnings, and $35,000.00 for pain, *235 suffering, mental anguish, disfiguring scars, permanent disability, impairment of future earning capacity, and future pain and suffering. All defendants (except Robert) have appealed. Each appellant seeks a reversal of the judgment insofar as it casts the appellant for damages. Plaintiff has answered the appeal praying that the award for personal injuries be increased to $150,-000.00 and that the credit allowed American Automobile Insurance Company for the $500.00 which it paid plaintiff under the medical provisions of its policy be disallowed and deleted from the judgment.
Appellants do not contest the amounts allowed plaintiff by the lower court in said judgment.
All issues between the parties in the in- ■ stant suit may be adjudicated for the reasons set forth in the opinion and decree in the Champagne case, except there remains to be passed on herein the question of quantum for plaintiff’s injuries and whether American Automobile Insurance Company is entitled to a credit for the $500.00 paid under the medical expense insuring provisions of its policy.
The policy of the American Automobile Insurance Company covering the Robert car provides that the insurer will pay to any person who sustains bodily injury, caused by accident, while occupying the insured vehicle, all reasonable expenses incurred for necessary medical services, etc. The insurer under the above insuring agreement paid plaintiff the sum of $500.00 (the policy limit) towards his medical expenses. These expenses amounted in all to the sum of $1,922.92, and the court below rendered judgment for the said amount in favor of plaintiff but allowed the insurer a credit for the $500.00 already paid. This was proper. In Gunter v. Lord, 242 La. 943, 140 So.2d 11, the Supreme Court held that an injured automobile passenger who had been paid for medical expenses under the medical payments provision of an automobile policy could not be awarded the same medical expenses in a tort action brought directly against the insurer.
The case of Dowden v. Southern Farm Bureau Casualty Insurance Company, 158 So.2d 399, cited by appellant, is not applicable. In that case the court held that at credit should not be allowed to the liability insurer for payments previously received by the passenger under the medical payments clause of a liability policy where no recovery in the action was being permitted to the passenger for such medical expenses and recovery was allowed only for his personal injuries.
In the instant case, if the credit is not allowed the insurer, plaintiff will be collecting the $500.00 twice.
Plaintiff received very serious and lasting injuries as a result of the collision. His treating physician, Dr. John Davis Jackson, testified as follows:
“At the time I saw him he had a deep laceration over the right temporal region of his head and face was deeply lacerated; x-rays revealed a compound depressed right temporal skull fracture, also a fracture of the right zygomatic process and unusually deep and dirty cut of the right side of his face. He was in a semi-comatose state at the time and he was taken from the emergency room up to the operating room where this cut was surgically dressed, debrided. All the compound depressed fragments of the skull bone were removed. There was a laceration in the dura beneath the bone and that was sutured. We didn’t open the dura and look at. the brain; however this was a dirty wound and after the skull fracture was treated then the plastic surgeon entered the operation and they repaired the facial laceration. After that he stayed in my care in the hospital until February 1, 1962, when we felt that he had reached the point that he could be treated at home.
*236 “Now, at the time he was in the hospital, all the time he was in the hospital he was out of his head. He hallucinated, he didn’t recognize his family and incoherent at times; but by February 1, we felt that he had improved to the point that he could go home and be treated at home. So, we transferred him to his home. He came back to the hospital, however, on February 10, 1962 and was seen in the emergency room because he was running a fever of 101.6. X-rays of his chest revealed that he had pneumonia. He wasn’t admitted to any surgery at that time. Dr. Hurst Hatch, head of the Chest Department, had treated him but I saw him while he was in the hospital. He had a right lower lobe pneumonia. He returned to his home on the 28th of February. After that Dr. Hatch saw him in the Clinic and I saw him in my office from the time, but, he after leaving the hospital — to go back a little bit — on February 3, we performed an electroencephalogram which revealed an abnormal record showing that there was deformity and disfunctioning of the brain; and we felt this was due to the brain being bruised at the point of his injury in the right temporal region. Now, later on I saw him from the time in the Clinic and he gradually improved to the point that we thought he could start doing a little work around the house. He was a pipefitter before he was injured and as the months went on he improved to the point that I felt in October, 1962 that he would be able to return to work. Incidentally we did another electroencephalogram on July 25 and it revealed that the record had returned to normal so that the electrical activity of his brain at least returned to normal. Now, he went back to work and, I believe, it was in October but at first he started back to light duty and then began to have more responsibility on the job. And, one day his supervisor telephoned me to say that he wasn’t able to do the work that he had done previously; that he was confused at times on the job; that the supervisor would point out work for him to do and that he would do it wrong; so we decided that he should stop work. And, then in January, because of personality change, I requested that Dr. Fosberg perform psychological tests on him. Dr. Fos-berg examined him and sent a report to me. Possibly I could quote that report.”
Dr. Fosberg (psychologist) examined the patient and rendered a lengthy report to Dr. Jackson which contains the following:

"CONCLUSION

“This is a 32 year old white male functioning currently at an average to dull average level with mild to moderate organic brain damage impairment in the cognitive fields. He presently has a psychoneurotic personality pattern classifiable as inadequate personalty. (Code ooo-X41 — American Psychiatric Association’s official nomenclature.)
“Psychiatric help will of course not alter the effects of organic brain damage. Inadequate personalities can rarely if ever be altered in their inherent structures by any form of therapy. Their functioning may be improved by prolonged therapy, but basic change is seldom accomplished.”
Dr. Jackson also testified:
“Well, this injury has changed his personality. It has affected his memory somewhat. He is not the same type of person that he was before. He is quite labile initially, gets mad easily, cries easily, laughs easily and that is the sort of damage we are talking about.
“Q. And you stated that the prognosis for recovery is poor?
“A. It is poor in this case, right.”
*237 Thus it will be seen that plaintiff is m a very pitiable condition.
He has a wife and three children; his earning ability has been rendered nil. He was 30 years old when injured with a life expectancy of 34.5 years. He earned $146.78 per week with Avondale Marine Ways by whom he was employed. During his life expectancy had his ability to work and earn remained the same he could have expected an aggregate of nearly $264,000.-00 (before the 5 percent discount).
Considering all circumstances in connection with this unfortunate plaintiff’s injuries, we come to the conclusion that the award of $35,000.00 for personal injuries is woefully inadequate and think that the judgment in that respect should be increased to $100,000.00.
We would probably raise the judgment to $150,000.00 as prayed for in the answer to the appeal, but we notice that Joseph and Dominic Giardina took devolutive appeals only which seems to be indicative of the fact that they are perhaps persons of no great means. An allowance of $100,-000.00 for personal injuries will greatly exceed the limits of the insurance policies covering the vehicles, and the overplus will have to be borne by the Giardinas. For that reason we conclude that $100,000.00 will do substantial justice.
For the reasons above assigned, the judgment of the lower court is recast and amended so as to read and provide as follows: It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Clifford J. Debautte, against Joseph Giardma, Dominic Giardina, Southern Farm Bureau Casualty Insurance Company, Clifford J. Robert, and American Automobile Insurance Company for the following amounts: $1,922.92 for medical expenses, $6,115.54 for loss of earnings, and $100,000.00 for the personal injuries and impairment of future earning capacity, together with legal interest on said amounts from the date of judicial demand until paid; provided however, the indebtedness of Dommic Giardma shall be limited to his virile share as an ordinary partner of Joseph Giardina; the indebtedness of Southern Farm Bureau Casualty Insurance Company shall not exceed its liability under its policy; the liability of Clifford J. Robert for plaintiff’s personal injuries, etc., shall not exceed the amount of the judgment therefor rendered against him in the court below; and the indebtedness of American Automobile Insurance Company shall not exceed the limits of its liability under its policy, and its indebtedness is subject to a credit of $500.00 heretofore paid by said insurer to plaintiff under the medical provisions of its policy; the judgment is to run and bear against all of said defendants in solido. All defendants are cast for the costs in the lower court, and all appellants are cast for the costs of appeal.
As thus amended and in all other respects the judgment is affirmed.
Recast, amended and affirmed.