239 So.2d 367 (1970)
Howard HERBERT
v.
TRAVELERS INDEMNITY COMPANY et al.
No. 3471.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1970.
Rehearings Denied October 5, 1970.
Writ Refused November 25, 1970.
*368 Krieger, Krieger & Tracy, I. Jay Krieger, Mildred L. Krieger, and Robert K. Tracy, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr., and Ashton R. Hardy, New Orleans, for defendants-appellees.
Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for Louisiana State Medical Society, appearing as amicus curiae.
Before REGAN, SAMUEL, and BARNETTE, JJ.
BARNETTE, Judge.
This appeal is before us for the third time. The plaintiff seeks recovery of damages for an injury resulting from the alleged negligent administration of a spinal anesthetic.
The first appeal, Herbert v. Travelers Indemnity Company, 193 So.2d 330 (1967), resulted from a trial before a jury which rejected the plaintiff's demands. We set aside the judgment and remanded with instructions for the reasons stated in that opinion. The Supreme Court refused certiorari for the reason "Judgment not final." 250 La. 365, 195 So.2d 643.
When the case was again called for trial in the district court, pursuant to our order of remand, the parties mutually consented to a waiver of trial by jury and agreed that the case be heard by the judge alone. Upon conclusion of that trial at which a substantial amount of additional medical testimony was heard and admitted by deposition and certain exhibits and the complete record of the first trial was introduced, the trial judge found for the plaintiff and awarded damages against the defendants Dr. Byron J. Casey, Anesthesia Associates, and Travelers Indemnity Company in the principal sum of $75,000. The defendants appealed.
The appeal from that judgment reached us in due course and the case was again remanded. 221 So.2d 619 (La.App., 1969). The reason for remand on that occasion, as stated in that opinion, was based upon an affidavit on behalf of defendants-appellants of certain alleged newly discovered evidence having a material bearing on the extent of plaintiff's disability and his credibility as a witness. We thought the ends of justice would be best served by a remand of the entire case. The Supreme Court this time granted certiorari. 254 La. 282, 223 So.2d 408. It reversed our judgment and remanded the case to this court for further proceedings according to law and consistent with its expressed views. 255 La. 645, 232 So.2d 463 (1970). It is on that remand that the case is now before us.
We readopt our statement of the case and all views expressed by us in our original opinion to the point of our decision to remand. See 193 So.2d at pp. 332-336. We will not, therefore, burden this opinion with a review of the facts and the evidence prior to the trial on remand.
On trial on remand the court admitted into evidence:
1. The deposition of Dr. Christian Keedy, a specialist in neurosurgery practicing in the state of Florida. We are satisfied that he is eminently qualified to give expert testimony in his field of specialty.
2. The deposition of Dr. Clifford McIntyre of Fort Lauderdale, Florida, a specialist in the field of neurology and psychiatry and who also holds a degree in law. We do not give as much weight to the testimony of this witness as we have given to the other medical experts. We are not convinced that his testimony is entirely objective and without bias.

*369 3. The deposition of Dr. Pedro Arroyo, also of Florida, who identified himself as a specialist in "physical medicine and rehabilitation."
In addition to the foregoing depositions the court heard testimony of Dr. Homer Kirgis and further testimony of Dr. Casey, Dr. Richard Paddison, Dr. Richard Levy, and Dr. John Adriani. We have also testimony of two lay witnesses for plaintiff and further testimony by the plaintiff.
All the original testimony has been reviewed and the additional testimony of all the witnesses has been considered carefully. It is generally cumulative with much repetition. We see no point of a lengthy review of the testimony of each individual witness.
We concur in the opinion of the trial judge that some untoward event occurred during the administration of the spinal anesthetic; some omission or act from which resulted the condition of which the plaintiff complains; a condition not ordinarily resulting from a normal routine spinal anesthetic procedure. This unusual event casts upon the anesthesiologist the burden of proof of his freedom from negligence. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954); 61 So.2d 901 (La.App. Orleans 1952). See also Jacobs v. Beck, 141 So.2d 920 (La.App. 4th Cir. 1962); Andrepont v. Ochsner, 84 So.2d 63 (La.App. Orleans 1955); Thomas v. Lobrano, 76 So.2d 599 (La.App. 2d Cir. 1954). We agree with the trial judge that Dr. Casey has not successfully carried this burden.
The expert medical testimony clearly preponderates in support of the conclusion that there was a causal relation between the administration of the spinal anesthetic and the residual symptoms. It is agreed by all of them that it is not unusual that a nerve root might be struck by the spinal needle and that when this occurs the patient will give an outcry or otherwise evidence severe pain as though subjected to an electric shock. When this occurs the physician, whether he be an anesthesiologist or a neurosurgeon doing a spinal tap, should pull back on the needle which will relieve the pain and then reposition the needle. It is a cardinal rule that the patient must be free from pain, thus indicating that the needle is not pressing against the nerve root, before proceeding with the injection of the anesthetizing solution. They all agree that the injection is never knowingly made into a nerve root.
There is a procedure for determining that the needle is in proper position for the injection. A free flow of spinal fluid in the needle is determined to indicate that it is in position for a safe injection. Dr. Casey testified that he observed all these procedures and did not make an injection into a nerve root. He testified that the patient was not in pain and that he would not have made the injection if he had been. The evidence does not support a conclusion that Dr. Casey ascertained that the plaintiff was not in pain when the injection was made as it was his professional duty to do.
We are convinced that the plaintiff gave an outcry of intense pain and that he pleaded for relief. We are convinced also that he was then given a shot of Nembutal intravenously in the left hand by a nurse or assistant to Dr. Casey. He was rendered unconscious immediately. This, we think, explains why he thereafter exhibited no further evidence of pain. Under this condition Dr. Casey was negligent in assuming that the cause of pain, i. e., contact with the nerve root, had been relieved.
It was explained that Nembutal is not an anesthetizing drug, but is an analgesic agent for the relief of pain. Dr. Casey admitted that Nembutal was given either by himself or his assistant, he could not remember which, but that it was given after the spinal anesthetic was given. We do not find that the question was asked specifically why it was given at this point *370 in the procedure. It would seem unnecessary to administer a pain relieving drug if the anesthetic was successfully completed. Dr. Casey did say, however, that the patient was apprehensive and nervous and it was necessary to give him something to quiet him. We are convinced that the Nembutal shot was given as the plaintiff testified. Having been rendered unconscious by the Nembutal his complaint of pain was silenced. This very conceivably could account for Dr. Casey's continuing the administration of the anesthetic contrary to the rule regarding pain.
The experts generally agree that there was a traumatic injury to the L-5 and S-1 nerve roots although Dr. Kirgis and Dr. Arroyo thought possibly two additional nerve roots might have been involved. All the experts agree that it is impossible to inject an agent into two or more nerve roots with one insertion of the needle. Counsel for defendants vigorously argues that this conclusively negates the theory of injection into a nerve root as the cause of plaintiff's injury. The fact is clearly evident from the testimony of the experts that there was an injury to the nerve roots L-5 and S-1. It is not incumbent upon the plaintiff to give a pathological explanation of the cause. Whether or not the injection was made directly into one of them or the roots were damaged in some other manner, is arguable; but the preponderance of testimony leaves no doubt that an injury was inflicted to the nerve roots which would not have happened in a normal and routine procedure. The mere striking of a nerve root, which all agree is not unusual, does not cause permanent injury. It is considered routine if followed by the prescribed procedure. Unquestionably a permanent injury did result and the only conclusion which we can draw is that the prescribed procedures were not followed, notwithstanding Dr. Casey's insistence to the contrary.
Dr. Casey is an experienced anesthesiologist and we do not doubt his ability to administer a spinal anesthetic as skillfully as other anesthesiologists in this community, but we must hold under the evidence that he did not adhere to the standard of care, knowledge and skill required of him in this case.
It is significant that Dr. Casey's anesthesia record is in error in some material respects and incomplete in others. This is a circumstance which we have considered in determining his adherence to the prescribed rules of his profession.
The diagnoses of the several medical experts may be summarized as follows:
A neuritis of the fifth lumbar and first sacral roots as a result of a chemical injection into a root. Dr. Paddison
A traumatic neuropathy, meaning an injury to the left fifth lumbar and first sacral nerve root secondary to a spinal anesthetic. Dr. Levy
A mild mechanical injury to the first sacral nerve on the left side causing abnormal function and sensations termed paresthesia. Dr. Kirgis
Radiculitis, meaning nerve root inflammation; or causalgia, meaning injury to a peripheral nerve; or arachnoiditis, meaning inflammation of the arachnoid. Causalgia was ruled out by sympathetic nerve block. Dr. Gass
Radiculitis involving S-1 and L-5 regions on the left without clinical motor involvement. Dr. Keedy
Nerve pressure syndrome or nerve root syndrome in the left extremity; a denervation causing a muscular abnormality. Dr. Arroyo.
The medical experts are in agreement that these injuries are permanent. Dr. Richard Levy estimated a 15-percent disability of the body as a whole. There is no cure and the only remedies suggested are very drastic. A unilateral chordotomy would eliminate pain sensation in the lower extremity. This is a severe and destructive procedure with hazardous potential, *371 which is not recommended. A rhizotomy was discussed by Dr. Levy and described as "nerve root section." He had no recommendation, saying that all suggested surgical procedures had their disadvantages. The surgical procedure which might eliminate the sensation of pain would also destroy the sensation to heat and touch, which could cause serious injury.
We must conclude that the injury is serious and permanent though not totally disabling.
The plaintiff was 34 years old at the time of his injury, married and the father of three children. He was physically normal and was self-employed in the retail shoe business. He complains of inability to operate his business as formerly in that he is handicapped in climbing, stooping and walking. He has a slight limp, favoring his left leg. He complains of constant pain and of difficulty sleeping at night. He daily takes pain relieving medicine and sedatives. At the second trial he admitted his psychological improvement in that he is adjusting to a life of pain and partial disability. These complaints are corroborated in part by his wife and other lay witnesses.
Dr. Solomon Winokur, a physical therapist, administered 151 physiotherapy treatments from August 8, 1962 to June 24, 1963. He said there was nothing to be accomplished by further treatment and that the subjective symptoms of pain had not been relieved by his treatments.
There is objective evidence of a weakness in his lower left extremity. The pain radiates along the posterior aspect of the thigh down the calf of his leg to his instep and great toe. The subjective symptoms are pain, numbness and a burning sensation. These vary to some degree according to his physical activity, but he testified that he is never entirely free of pain. By its very nature his testimony is self serving but there is no apparent reason why it should not be accorded due weight.
There is no evidence upon which special damages can be awarded, though it is obvious that he must have incurred considerable expense. It should be mentioned that after he filed this suit for damages he could not find any doctor in the New Orleans area willing to do a nerve block, an effective diagnostic procedure in cases involving nerve injury. We are impressed with the considerate treatment he received from Dr. Paddison who went so far as to undertake to get a doctor acquaintance at Duke University to do a nerve block. He too declined to do so because the case was in litigation. This explains why the plaintiff went to Detroit to obtain the service of Dr. Harvey Gass, who was willing, despite the suit, to do a nerve block and perform a myelogram.
The defendants have questioned the admissibility of the testimony of the out-of-state doctors, citing LSA-R.S. 37:1284 which provides in pertinent part:
"Unlicensed physicians shall not * * * be allowed to testify as a medical or surgical expert in any court * * *."
They make no serious argument in this court on this point, but we think it should be answered. The purpose of the statute is to deny unlicensed medical practitioners in Louisiana acceptance as medical experts in our courts. The out-of-state doctors whose depositions have been admitted in evidence in this case have not practiced in this State. Their examinations of the plaintiff were in their respective states where they are licensed medical practitioners. The statute in question does not relate to them. To hold otherwise would render inadmissible the testimony in this State of certain experts of world renown attached to the great medical centers in other states. This is not the purpose of the statute. Brown v. Yellow Cab Company of Shreveport, 94 So.2d 573 (La.App. 2d Cir. 1957).
To what extent, if any, the trial judge considered special damages, we do not *372 know. His award of $75,000 is not itemized.
We have given much consideration to the quantum issue. The defendants strenuously insist that it is grossly excessive. We feel restricted by the jurisprudential rules enunciated by the Supreme Court in Lomenick v. Schoeffler Cadillac, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), from substituting our discretion for that of the trial judge. However we are firmly of the opinion that the award of $75,000 is excessive.
Had we reached the issue of quantum on the first appeal we would have awarded a lesser amount. Our opinion has not been altered by the additional evidence brought out on remand. We have reviewed our jurisprudence, particularly cases in which substantial awards have been upheld, and we fail to find any case of fairly comparable injury in which an award in the $75,000 range has been given. We have found no case involving an injury similar to that presented here without additional aggravating circumstances. The following cases are cited not because of any factual similarity but as illustrative of substantial awards in serious personal injury cases for comparison rather than an attempt to seek uniformity: Herrin v. Perry, 215 So.2d 177 (La.App. 3d Cir. 1968) (writs granted, affirmed, 254 La. 933, 228 So.2d 649 (1969)); Spizer v. Dixie Brewing Co. 210 So.2d 528 (La.App. 4th Cir. 1968); DeLaune v. Lousteau, 193 So.2d 907 (La.App. 1st Cir. 1966); Knotts v. Employers Casualty Company, 177 So.2d 630 (La.App. 3d Cir. 1965); Debautte v. Southern Farm Bureau Casualty Ins. Co., 170 So.2d 234 (La.App. 4th Cir. 1964); Brunson v. Royal Indemnity Co., 166 So.2d 656 (La.App. 1st Cir. 1964); James v. State, 154 So.2d 497 (La.App.4th Cir. 1963); Pierrotti v. Louisiana Department of Highways, 146 So.2d 455 (La. App. 3d Cir. 1962).
It is our opinion that an award of $50,000 would be more consistent with our jurisprudence and a just compensation for the pain and suffering and partial permanent disability suffered and to be suffered by the plaintiff in the future.
After reaching the foregoing conclusion we learned of a decision handed down June 29, 1970 by the Second Circuit Court of Appeal in the case of Joyner v. Aetna Casualty & Surety Company et al., 240 So.2d 545 on the docket of that court, which involves a similar injury and similar judgment. That court reduced a jury award of $75,000 to $50,000. In that case the plaintiff, also 34 years of age, sustained a serious back injury with nerve root involvement. There were four periods of hospitalization extending over 80 days with two surgical operations. There was permanent disability of 25 to 30 percent of the body as a whole. There was intense pain over prolonged periods. Future earnings were highly speculative. The court held an award of $75,000 was an abuse of the jury's "much discretion" and reduced to $50,000. We merely cite this case for comparison.
The defendants have filed another motion for a remand supported by an affidavit. They allege that surveillance films taken of the plaintiff show him walking without a limp and that the films were not available prior to the second trial below. They argue that the films bear materially on the quantum issue, but also will tend to impeach the plaintiff and serve to discredit his testimony. They argue that a remand under these circumstances would not be in conflict with the Supreme Court's reasons for remanding the case to this court. We do not agree. The opinion of the Supreme Court is interpreted by us as a clear mandate to decide all the issues and bring this protracted litigation to a conclusion. This we have attempted to do justly upon the record before us on this appeal.
*373 For these reasons the judgment appealed is amended by reducing the quantum of award to the plaintiff, Howard Herbert, to $50,000. As thus amended it is affirmed at the cost of defendants-appellants.
Amended and affirmed.
REGAN, Judge (concurring).
I respectfully concur.