BOLIN, Judge.
Plaintiffs appeal from judgment rejecting their claim for damages allegedly caused by the negligence, carelessness and want of skill of Dr. Henry H. Goldsby, Jr., in puncturing the right ear drum of Mrs. Miller while cleaning her ears by the lavage method.
For written reasons the trial judge concluded that, even if the ear drum had been punctured, defendant insurer of Goldsby had borne the burden of proving the doctor “more probably than not complied with the standard of care required of physicians in this area.” We affirm the judgment.
As we are in accord with the written reasons of the district judge we shall summarize the factual findings upon which we base our decision.
Mrs. Miller, 73 years of age at the time of trial, had suffered a ruptured ear drum in her right ear approximately ten years earlier for which she had been treated by an ear specialist. For several years prior to the incident made the basis of this suit Mrs. Miller had been a patient of Dr. Goldsby, an eye, ear, nose and throat specialist. On one of her visits to Dr. Golds- *756 by she complained of a partial loss of hearing. On June 30, 1969 the doctor found some hard wax in her right ear. She testified he gave her some drops to soften the wax and told her to return in two weeks. However, she alleged in her petition that he probed in her ear. In any event, after several more visits Dr. Golds-by washed her ears out with a syringe. Soon thereafter she became dizzy and began to hear noises. After several more visits to Dr. Goldsby she went to Dr. Richard Bland, also an ear, nose, and throat specialist, who diagnosed her condition as a ruptured ear drum and performed surgery to repair the rupture.
Mrs. Miller contends Dr. Goldsby was negligent in washing her ears under pressure without removing the accumulation of wax and without looking at the ear drum previous to the washing. It is contended this treatment was performed in a manner below the standard of care ordinarily exercised by ear specialists in this area. Unfortunately Dr. Goldsby met an untimely death soon after his treatment of Mrs. Miller. Dr. Bland testified at length and stated that in his opinion it was more probable than not that plaintiff had a weak right ear drum because of the prior rupture. He further testified Mrs. Miller had the type of ears that produced a heavy accumulation of wax and that if they had not been cleaned out in ten years or so he would have probably used the same treatment as Dr. Goldsby. He said it is always better for the doctor to see the ear drum before applying water under pressure. However, he qualified this by explaining that he and other doctors in town sometimes found it necessary to wash out a patient’s ear without being able to see the ear drum because of the accumulation of hard wax.
Counsel for plaintiffs argue that it has not been shown Dr. Goldsby attempted to dig the wax out. Taking into consideration the pleadings, the testimony and the notes of Dr. Goldsby which were introduced into evidence by plaintiff, we conclude, as did the trial judge, that Dr. Goldsby used drops to soften the wax which he attempted to dislodge by probing before washing the ear.
Appellants cite numerous authorities relating to the degree of care required of physicians in treating their patients. It is argued the burden of proof shifts to the physician once an unusual or unexpected event occurs resulting in injury to a patient he is treating. It is also contended the doctrine of res ipsa loquitur is applicable to the facts of this case. Among the authorities cited are the cases of Herbert v. Travelers Indemnity Company et al. (La.App.4th Cir. 1970—writ refused), 239 So.2d 367; Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1953); and an article by Justice Sanders entitled “Anatomy of Proof in Civil Actions”, 28 Louisiana Law Review 297 (1968).
We have no quarrel with the cited authorities; indeed, we agree with the holdings and result in each of the cited cases and find the article by Justice Sanders to be not only scholarly but legally sound. We cannot refrain, however, from pointing out that this, like all other tort actions, is primarily and fundamentally grounded on Louisiana Civil Code Article 2315. Therefore, as an absolute prerequisite for award of damages “fault” must be found. In determining fault or lack thereof a court must take into consideration all the facts surrounding the alleged tort, such as the nature of the damages, the standard of care owed by the alleged tort feasor to the one damaged, etc. Whether we adopt the evidentiary rule of shifting the burden of proof to defendant to exculpate himself, as done in Herbert, or whether we apply something akin to res ipsa loquitur as set forth in Meyer, we conclude plaintiffs’ demands should be rej ected.
We agree with the finding of the trier of facts “that Dr. Goldsby more probably than not complied with the standard *757 of care required of physicians in this area”. Under this finding there is no “fault” upon which to predicate an award of damages.
Judgment affirmed at appellants’ cost.